# FOR PUBLICATION

ATTORNEYS FOR APPELLANT:

**LILABERDIA BATTIES**
Batties & Associates
Indianapolis, Indiana

**PATRICIA MCMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**PATRICK M. RHODES**
Indiana Department of Child Services
Indianapolis, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

FILED
May 07 2013, 9:36 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF THE PARENT-CHILD RELATIONSHIP OF: | ) ) ) ) | |
| A.D.S. & A.S. (MINOR CHILDREN) AND L.S. (MOTHER), | ) ) ) ) | |
| Appellant-Respondent, | ) ) | No. 49A02-1207-JT-604 |
| vs. | ) ) | |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) ) | |
| Appellee-Petitioner. | ) ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn Moores, Judge
The Honorable Larry Bradley, Magistrate
Cause No. 49D09-1201-JT-3115, 49D09-1201-JT-3117

**May 7, 2013**

**OPINION – FOR PUBLICATION**

**MATHIAS, Judge**

L.S. ("Mother") appeals the involuntary termination of her parental rights to her children, A.D.S. and A.S., (collectively, "the Children") and raises two issues, which we restate as whether there was sufficient evidence to support the trial court's order terminating Mother's parental rights to the Children.[1]

We affirm.

## Facts and Procedural History

Mother is the biological mother of A.D.S., born November 10, 2007, and A.S., born August 27, 2009.[2] On July 8, 2009, Father[3] contacted the police after Mother repeatedly called him at work and threatened to harm herself if he did not come home. The Indiana Department of Child Services local office in Marion County ("MCDCS") was subsequently called to the home.

The following day, MCDCS filed a petition alleging that A.D.S. was a child in need of services ("CHINS") because the child's parents had "failed to provide the child with a safe, stable, and appropriate living environment free from substance abuse." Ex. Vol., Petitioner's Ex. 1. Mother was pregnant with A.S. at the time of the petition, tested positive for cocaine, and admitted to a prior history of substance abuse, although she denied that she was currently using cocaine. Father informed the Family Case Manager that Mother was engaging in self-harming behavior by cutting herself and that he

---

[1] We held oral argument on this matter on April 12, 2013 at Taylor University. We thank faculty, staff, and students for their hospitality. Additionally, we commend counsel on the quality of their oral and written advocacy.

[2] We note that Mother has three other, older children. Her parental rights to her first two children were terminated in March 2001 due to her cocaine use and instability, and she voluntarily terminated the rights to her third child in 2006.

[3] Father, also named A.S., signed adoption consents for the Children and is not party to this appeal.

2

suspected that she was using cocaine again. He expressed concern regarding A.D.S.'s safety when he left her alone with Mother. Thus, due to concerns regarding Mother's mental health issues and substance abuse, and Father's inability to protect the child, MCDCS filed the CHINS petition regarding A.D.S.

On August 20, 2009, Mother admitted A.D.S. was a CHINS, and under the participation decree, she was required to submit to random urine screens and complete a Psychological Evaluation. Mother was granted temporary in-home trial visitation with A.D.S. at this time.

Mother gave birth to A.S. on August 27, 2009. On November 9, 2009, MCDCS filed a CHINS petition regarding A.S., alleging that Mother was not obtaining services to address her mental health and substance abuse issues in the open case regarding A.D.S. Ex. Vol.; Petitioner's Ex. 2. A.S. was removed from Mother's home. MCDCS also filed a Motion For Authorization For Removal From Temporary In-Home Trial Visitation And Placement in Relative Care/Therapeutic Foster Care requesting that A.D.S. be placed in relative placement/foster care. Ex. Vol.; Petitioner's Ex. 2A. The trial court granted the motion to remove A.D.S. from Mother's care and authorized Mother to have supervised parenting time with the Children. Ex. Vol.; Petitioner's Ex. 3. Since the Children's removal from the home, they have not been placed back into the home with Mother.

On January 21, 2010, Mother admitted to the allegations in the CHINS petition regarding A.S. The trial court determined that A.S. was a CHINS and formally removed A.S. from Mother's care. Under the participation decree, the trial court ordered, among other requirements, that Mother participate in home-based counseling, random drug

3

screens, a mental health evaluation, and an intensive outpatient treatment program ("IOP").

In January and February 2010, Mother tested positive for cocaine. Ex. Vol.; Petitioner's Ex. 8. Mother later testified that, around this time, she used cocaine for forty days. Tr. p. 64. On February 3, 2010, the trial court suspended visitation between Mother and the Children. On March 8, 2010, the trial court authorized Mother to have supervised parenting time once she completed IOP and a drug screen.

In March 2010, Mother completed inpatient treatment at Harbor Lights, and then she self-referred to Emberwoods for IOP. Although Mother missed six out of eight classes in a six-week period, Emberwoods reported that she completed the service. Tr. p. 145. However, MCDCS was concerned with Emberwoods's report of completion due to the multiple missed sessions and inconsistent urine screens; therefore, the court allowed MCDCS to make another referral to a different agency for assessment. Mother was then referred to Families First, but Mother missed multiple sessions there and was discharged for not successfully participating. Tr. pp. 160, 179.

Up until October 2010, the permanency plan for the Children remained reunification with the parents. However, following missed drug screens and concern that Mother was tampering with her completed drug screens, in October 2010 the court ordered the permanency plan for the Children to be changed to adoption, rather than reunification. The court also found that the services offered to Mother had not been effective or had not been completed by Mother and thus directed that MCDCS was not required to provide Mother any more services. Shortly thereafter, MCDCS filed a

4

petition for termination of parental rights. However, the trial court dismissed the petition when the Children's placement at the time was disrupted, and there was no stable, sound placement for the Children. Tr. p. 242. As a result of the dismissal, in or around June 2011, MCDCS made a second referral for home-based services for Mother.

Throughout the pendency of the case, Mother engaged in criminal activity. Mother was arrested for prostitution in August 2010 and was subsequently convicted for the offense. Moreover, on February 16, 2011, Mother was arrested after a domestic altercation with Father, and she subsequently pleaded guilty to criminal recklessness and domestic battery. Her plea agreement contained a no contact order prohibiting contact with Father, and she was placed on probation and ordered to undergo domestic violence treatment. However, shortly thereafter, Mother violated the no contact order, and she was arrested, and later convicted, for invasion of privacy. As a result of this violation of her probation terms, she was placed on home detention.

In December 2011, Mother violated home detention by testing positive for cocaine, and she was arrested. As a result, home-based counseling was again terminated. Mother testified she last used cocaine in December 2011 and January 2012. And since March 2012, when she was again referred for drug testing, she has tested negative seventeen times. However, she also missed several drug screens, including a drug screen the week prior to the termination hearing. Tr. p. 10. Mother also failed to complete her domestic violence classes ordered by the court pursuant to her plea agreement for criminal recklessness and domestic battery. In addition, at the time of the termination

5

hearing, Mother still resided with Father, who had also failed to complete the domestic violence classes.

Throughout the pendency of this case, the Children have been placed in multiple foster homes. However, since October 2011, the Children have resided with their current caregivers, and both the Family Case Manager, Jessica Lee ("Lee"), and Guardian ad Litem, Carolyn Thurston ("Thurston"), have remarked that the Children are improving in this home. Lee testified that this placement is pre-adoptive and that the Children are "thriving" and have bonded with their foster mother. Tr. p. 154.

On January 25, 2012, the MCDCS filed a second Petition for Involuntary Termination of the Parent-Child Relationship noting that the Children had been adjudicated as CHINS and had been removed from Mother's custody for six months following a disposition order. On June 18-19, 2012, the trial court conducted an evidentiary hearing and then took the matter under advisement. On June 27, 2012, the trial court terminated the parent-child relationship between Children and Mother.

Mother now appeals. Additional facts will be provided as necessary.

**Discussion and Decision**

The Fourteenth Amendment of the United States Constitution protects "the traditional right of parents to establish a home and raise their children[.]" In re C.G., 954 N.E.2d 910, 923 (Ind. 2011). However, when evaluating the circumstances surrounding a request to terminate parental rights, a trial court must "subordinate the interests of the parents to those of the child[.]" See In re K.S., 750 N.E.2d 832, 837 (Ind. Ct. App. 2001). "Termination of a parent-child relationship is proper where the child's emotional

and physical development is threatened." Id. Although the right to raise one's own child should not be terminated solely because there is a better home available for the child, parental rights may be terminated when a parent is "unable or unwilling" to meet his or her parental responsibilities. Id. at 836-37.

Before parental rights may be involuntarily terminated, the State must allege and prove, in relevant part:

> (B)    that one (1) of the following is true:
>
> > (i)    There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside of the home of the parents will not be remedied.
> >
> > (ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > (iii)    The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C)    that termination is in the best interests of the child; and
>
> (D)    that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). "The State's burden of proof in termination of parental rights cases is one of 'clear and convincing evidence.'" In re G.Y., 904 N.E.2d 1257, 1260-61 (Ind. 2009) (quoting Ind. Code § 31-37-14-2). If the trial court finds that the allegations in a petition described in section 4 of this chapter are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

"When reviewing a termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses." In re D.D., 804 N.E.2d 258, 265 (Ind.

7

Ct. App. 2004), trans. denied. Instead, we consider only the evidence and reasonable inferences that are most favorable to the judgment. Id. Moreover, "[i]n deference to the trial court's unique position to assess the evidence, we set aside the judgment terminating a parent-child relationship only if it is clearly erroneous." In re L.S., 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), trans. denied.

Where, as here, the trial court enters findings of fact and conclusions of law in its termination of parental rights, we apply a two-tiered standard of review. In re J.H., 911 N.E.2d 69, 73 (Ind. Ct. App. 2009), trans. denied. First, we determine "whether the evidence supports the findings, and second we determine whether the findings support the judgment." C.G., 954 N.E.2d at 923. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). "If the evidence and inferences support the trial court's decision," we must affirm. C.G., 954 N.E.2d at 923. Here, Mother challenges whether there was sufficient evidence to support the trial court's determination that her parental rights should be terminated.[4]

### I. Conditions Remedied

Mother argues that MCDCS failed to prove that at the time of the hearing (i) the conditions that caused the removal of the children are likely to reoccur or (ii)

---

[4] Mother broadly argues that the MCDCS failed to prove by clear and convincing evidence the requirements under Indiana Code section 31-35-2-4(b)(2). However, Mother fails to make any specific arguments challenging the trial court's conclusions that the Children had been removed from Mother's care for the requisite time period and that there was a satisfactory plan in place for the care and treatment of the Children. Therefore, to the extent Mother was challenging the sufficiency of said conclusions under subsections (b)(2)(A) and (b)(2)(D), we find she waived these arguments on appeal because she failed to support them with cogent argument. Ind. App. Rule 46(A)(8)(a); see also City of Whiting v. City of East Chicago, 359 N.E.2d 536, 540 (Ind. 1977).

continuation of the parent-child relationship poses a threat to the well being of the children. Under Indiana Code section 31-35-2-4(b)(2)(B), a trial court is only required to find that one of the three elements of subsection (b)(2)(B) has been established by clear and convincing evidence before properly terminating parental rights. See L.S., 717 N.E.2d at 209.

Here, the trial court first concluded that "[t]here is a reasonable probability that the conditions that resulted in the children's removal and continued placement outside the home will not be remedied by their mother." Appellant's Br. at 22. When making a determination as to whether there is a reasonable probability that the conditions resulting in a child's removal or continued placement outside of a parent's care will not be remedied, a trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing, taking into consideration evidence of changed circumstances. In re J.T., 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), trans. denied. The court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child." Id. The court may consider "evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment." A.F. v. Marion Cnty. Office of Family & Children, 762 N.E.2d 1244, 1251 (Ind. Ct. App. 2002), trans. denied. The trial court may also consider services offered to the parent by MCDCS and the parent's response to those services, as evidence of whether conditions will be remedied. Id. MCDCS is not required to provide evidence ruling out all possibilities of change; rather,

it need only establish "that there is a reasonable probability that the parent's behavior will not change." In re Kay L., 867 N.E.2d 236, 242 (Ind. Ct. App. 2007).

The trial court made detailed findings regarding Mother's long struggle with substance abuse and her failure to complete rehabilitation services. The court specifically found that Mother "has a long history of cocaine abuse, starting at age eighteen or twenty[;]" that she has undergone inpatient treatments twice, in 2006 and 2010, but has relapsed both times; that her past cocaine usage and instability resulted in her rights being terminated to two other children and her voluntary relinquishment of her rights to a third child; that she testified to last using cocaine in January 2012; and that her "sobriety cannot be monitored with inconsistent urine screens." Appellant's Br. at 21-22.

The trial court acknowledged that Mother self-referred to Emberwoods for substance abuse treatment and completed an inpatient program at Harbor Lights, but the court noted that "[d]ue to inconsistent urine screens and court ordered swabs, concerns of a substituted urine sample, and the lax procedure at Emberwoods," Mother was referred to an additional substance abuse assessment that she failed to adequately complete. Id. The trial court also acknowledged that Mother "may have had another recent display of sobriety for five months" but found that without "consecutive monitoring this is not a given." Appellant's Br. at 22. Based on these findings and others, the trial court concluded that Mother has "failed to demonstrate the capacity to remain sober on a *consistent and permanent* basis." Id. at 21-22 (emphasis added).

The court also noted Mother's issues with domestic violence, including her convictions for criminal recklessness and domestic battery in March 7, 2011 and her

violation of a no contact order with Father in March of 2011. The court found that Mother had failed to complete her court-ordered domestic violence classes and that she still resided with Father, who also failed to complete his domestic violence classes. As a result, the trial court concluded that since Mother has not successfully addressed her issues with domestic violence, she could not offer a safe environment for the children. Based on these and other findings, the trial court concluded that there is a reasonable probability that the conditions that resulted in the Children's removal and placement outside Mother's care will not be remedied.

Mother argues that the trial court erred in its conclusion, because at the time of the termination hearing, she was employed, tested negative on the recent drug screens, and was not engaging in domestic violence. Yet, Mother's argument is simply a request to reweigh the evidence, which we will not do on appeal. See In re D.D., 804 N.E.2d at 265. Furthermore, the evidence clearly supports the trial court's findings.

While Mother has tested negative on recent drug screens, she has also missed several recent drug screens, including a screen the week prior to the termination hearing, and she tested positive for cocaine four times during the pendency of this case. Furthermore, Mother has a long history of substance abuse and has an equally long history of seeking treatment but then relapsing, including a relapse in December 2011 and January 2012. For all these reasons, we agree with the trial court's finding that "without

11

consecutive monitoring" her sobriety is not given, and she "has failed to demonstrate the capacity to remain sober on a consistent and permanent basis."[5] Appellant's Br. at. 22.

The evidence also clearly supports the trial court's finding that Mother has not addressed her issues with domestic violence. Mother failed to complete the domestic violence classes that she was ordered to complete pursuant to her plea agreement, and she still resided with Father, who also failed to complete the domestic violence classes. She also violated the no contact order that prohibited her from contacting Father.

Thus, based on the record, we are satisfied that clear and convincing evidence supports the trial court's findings, and these findings in turn support its conclusion that there is a reasonable probability that the reasons for the Children's placement outside the home will not be remedied.[6]

## II. Best Interests

Mother also argues that there was insufficient evidence to support the trial court's conclusion that termination of the parent-child relationship was in the Children's best interests. In determining what is in the best interests of the Children, the trial court is

---

[5] Mother attended the oral argument in this case and introduced herself to Judge Mathias afterward. Later, Mother asked a student to deliver documentation of her "clean" urine screen dated April 11, 2013, to Judge Mathias. Although the documentation was received, its receipt and surrounding circumstances were disclosed to counsel in a conference call the following business day, and the results were not considered in this opinion, as it was evidence outside the record.

[6] The trial court also concluded that continuation of the parent-child relationship poses a threat to the Children's well being. However, because there was sufficient evidence for the trial court to conclude that "[t]here is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied[,]" we need not address whether there was sufficient evidence that a continuation of the parent-child relationship is a threat to the Children's well being. Ind. Code § 31-35-2-4(b)(2)(B)(i); see also L.S., 717 N.E.2d at 209 ("The statute is written in the disjunctive[.]").

required to look beyond the factors identified by the Indiana Department of Child Services and to look to the totality of the evidence. McBride v. Monroe Cnty. Office of Family & Children, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). In so doing, the court must subordinate the interests of the parent to those of the children. Id. The court need not wait until the children are irreversibly harmed before terminating the parent-child relationship. Id. Moreover, we have previously held that the recommendation by both the case manager and child advocate to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. In re M.M., 733 N.E.2d 6, 13 (Ind. Ct. App. 2000).

Here, Lee, the Family Case Manager, and Thurston, the Guardian ad Litem, both supported termination of Mother's parental rights and supported adoption by the Children's current caregivers. Tr. pp. 180, 248. Moreover, as we noted above, Mother's issues with substance abuse and domestic violence have not been remedied and pose a risk to the safety of the Children if they were to be returned to her care. While this evidence alone is sufficient to support the trial court's conclusion that the best interests of the Children are served by terminating parental rights, we also note that "[p]ermanency is a central consideration in determining the best interests of a child." In re G.Y., 904 N.E.2d 1257, 1265 (Ind. 2009).

The record further reflects that the Children have suffered from a lack of permanency and that the Children have improved while residing with their current, pre-adoptive caregivers since October 2011. The Children have bonded and attached with

13

their caregivers and "[t]ermination, allowing for a subsequent adoption, would provide them with the opportunity to be adopted into a safe, stable, consistent and permanent environment where all their needs will continue to be met, and where they can grow." Appellant's Br. at 22.

For all these reasons, we conclude that the totality of the evidence supports the trial court's determination that termination of Mother's parental rights is in the Children's best interest.

## Conclusion

We conclude there was sufficient evidence that there is a reasonable probability that the reasons for the Children's placement outside the home will not be remedied and conclude that the totality of the evidence supports the trial court's conclusion that termination of Mother's parental rights is in the Children's best interest.

Affirmed.

CRONE, J., and BRADFORD, J., concur.