Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.

**FILED**

Jan 14 2015, 9:55 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ERIN L. BERGER**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General

**ABIGAIL R. MILLER**
Graduate Law Clerk
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE TERMINATION OF PARENT-CHILD RELATIONSHIP OF | ) | |
| | ) | |
| | ) | |
| K.N. (Minor Child), | ) | |
| | ) | |
| and | ) | |
| | ) | |
| M.B. (Mother) | ) | |
| | ) | |
| Appellant-Respondent | ) | |
| | ) | |
| vs. | ) | No. 82A05-1405-JT-239 |
| | ) | |
| THE INDIANA DEPARTMENT OF CHILD SERVICES, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Brett J. Niemeier, Judge
Cause No. 82D01-1311-JT-113

**January 14, 2015**

**MATHIAS, Judge**

The Vanderburgh Superior Court terminated the parental rights of M.B. ("Mother") to her minor child, K.N. Mother appeals and claims that the Department of Child Services ("DCS") failed to present sufficient evidence to support the trial court's decision to terminate her parental rights.

We affirm.

## Facts and Procedural History

Mother gave birth to K.N. in May 1999. K.N. lived with Mother for two years then became the ward of his paternal grandparents. The grandparents were K.N.'s guardians due to his parents' inability to financially support the child, the parents' then-ongoing divorce, and Mother's mental health problems. Mother eventually remarried, and K.N. was returned to her care temporarily. However, after Mother's new husband died, K.N. returned to live with his paternal grandparents. The grandparent's guardianship was dissolved in August 2012, and K.N. began to live with Mother once again.

In addition to her mental health problems, Mother also has substance abuse issues. In early December 2012, DCS received a report that K.N. was being neglected as a result of Mother's drug use. After an investigation, DCS removed K.N. from Mother's custody and on December 12, 2012, filed a petition alleging that he was a child in need of services ("CHINS"). After K.N. was removed, Mother tested positive for methamphetamine, amphetamine, oxycodone, and other opiate drugs. After a hearing

2

held on December 18, 2012, the trial court found K.N. to be a CHINS and on February 21, 2013, entered a dispositional order and a parental participation plan, which required Mother to: undergo a substance abuse evaluation and follow all recommended treatment; submit to random drug screens; use only one pharmacy to fill her prescription drugs; and obtain a mental health evaluation.

Mother's cooperation with the participation plan was sporadic at best. For example, she was in a detox program at the "Stepping Stone" facility for four days in January 2013 but left against the advice of staff. She told the staff that she would follow up with the outpatient addiction coordinator but never did. She then tested positive for THC on February 7, 2013, and failed to take a scheduled drug screen ten days later; she also submitted a diluted screen on March 1, 2013. Mother then went to Stepping Stone again on March 25 to discuss her treatment but failed to attend the scheduled intake appointment on March 29, 2013. Mother was admitted to Stepping Stone again on May 24, 2013, as part of a court-ordered sentence for contempt of court, but she was discharged on June 3, 2013, due to her behavior.[1]

On June 10, 2013, Mother began an intensive outpatient therapy program at Southwestern Mental Health Center and attended the first few sessions. However, she missed scheduled appointments on June 17, June 19, June 24, and June 26, 2013. She was then warned that continued failure to attend would result in her being discharged

---

[1] Other patients at the facility reported that Mother was using illicit substances, and Mother was observed behaving oddly at the facility. She was then given an on-the-spot drug test, which initially tested positive for THC, but subsequent lab testing came back positive only for the medications Mother was prescribed. Apparently, this incident caused tension between Mother and the facility staff, and Mother was discharged.

3

from the program. Mother then missed an appointment on July 17, 2013, and was discharged from the program on August 29, 2013. During the time the CHINS case was pending, Mother tested positive for methamphetamine six times and missed numerous scheduled drugs screens. Mother never completed any required drug treatment program.

With regard to her mental health plan, Mother fared no better. She went to an intake appointment for counseling at a mental health facility and attended a one-hour session. She then cancelled one session, failed to attend the next two scheduled sessions, and never returned for further treatment. Mother's mental health issues include obsessive-compulsive disorder, post-traumatic stress disorder, and bipolar disorder. Mother has emotional issues because she was sexually abused as a child. Also, in December 2013, Mother suffered a brain injury that resulted from her fall from a moving vehicle. She explained that this has caused her to have memory problems. In addition to these mental issues, Mother also suffers from Lyme disease and asthma.

Initially, the trial court ordered Mother to have visitation with K.N. once a week for two hours. Mother was inconsistent with her attendance at these visitations. On February 2 and February 9, 2013, Mother failed to attend the scheduled visitations. K.N., who was at the visitation site, became upset when Mother did not appear and stated that he was "used to [Mother] doing this to him." Ex. Vol., Petitioner's Ex. 2, p. 49. As a result of these incidents, Mother was informed that she had to call two hours prior to a scheduled visit to confirm that she would attend. However, she did not always do so. From July 2013 to December 2013, twenty-one visitations were scheduled; Mother

4

attended fourteen of these visitations but failed to attend seven. The trial court terminated the visitations in December 2013.

Mother's boyfriend moved into her home in June 2013. In January of the following year, however, a no-contact order was issued against her boyfriend because of an incident of domestic violence that required the intervention of the police. Mother's boyfriend later pleaded guilty to domestic violence. Although Mother attended domestic violence counseling, she testified that, after the no-contact order expired, she planned to contact her boyfriend to "talk and see how things go." Tr. p. 43.

Prior to being removed from Mother, K.N. was behind in his progress in school. He also tested positive for THC, opiates, and benzodiazepines at the hospital. During the CHINS proceedings, K.N. admitted to using "K-2," alcohol, and prescription drugs. In September 2012, he was placed in "Cross Pointe" for treatment due to suicidal ideations. Since his removal from Mother's custody, K.N. has been housed in several juvenile facilities, including Cross Pointe, and lived with his aunt and uncle. At the time of the termination hearing, then fourteen-year-old K.N. was at "Youth Village," where he was receiving substance abuse treatment and psychiatric therapy. Shortly before the termination hearing, K.N. was taken to the hospital, where his blood alcohol concentration was 0.31. Still, evidence existed that K.N. was "adoptable" and that a family member was willing to adopt him. Tr. p. 114. This family had already started to participate in pre-adoptive placement therapy.

Due to Mother's failure to participate in the ordered services and general lack of progress, DCS filed a petition to terminate parental rights on November 13, 2013. The

5

trial court held a hearing on the petition on February 20, 2014. On May 8, 2014, the trial court issued findings of fact and conclusions of law and ordered Mother's parental rights to K.N. terminated. Mother now appeals.

**Standard of Review**

We have long had a highly deferential standard of review in cases involving the termination of parental rights. In re D.B., 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We neither reweigh the evidence nor assess witness credibility. Id. We consider only the evidence and reasonable inferences favorable to the trial court's judgment. Id. Where, as here, the trial court enters findings of fact and conclusions of law in its termination of parental rights, we apply a two-tiered standard of review.[2] A.D.S. v. Ind. Dep't of Child Servs., 987 N.E.2d 1150, 1156 (Ind. Ct. App. 2013), trans. denied. We first determine whether the evidence supports the findings; we then determine whether the findings support the judgment. Id. Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference. Id. If the evidence and inferences support the trial court's decision, we must affirm. Id. Likewise, we will set aside the trial court's judgment terminating a parent-child relationship only if it is clearly erroneous. Id. In this context, "clear error" is that which "leaves us with a definite and firm conviction that a mistake has been made." Id. (quoting J.M. v. Marion Cnty. Office of Family & Children, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004)).

---

[2] Although trial courts are not statutorily required to enter findings of fact and conclusions thereon when terminating parental rights, we have nevertheless held that, given the constitutional import of such a decision, trial courts must "enter findings of fact that support the entry of the conclusions called for by Indiana statute and the common law" when issuing an order terminating parental rights. In re A.K., 924 N.E.2d 212, 220 (Ind. Ct. App. 2010).

6

**Termination of Parental Rights Statutes**

"The purpose of terminating parental rights is not to punish parents but to protect their children. Although parental rights have a constitutional dimension, the law allows for their termination when parties are unable or unwilling to meet their responsibility as parents." In re S.P.H., 806 N.E.2d 874, 880 (Ind. Ct. App. 2004) (citation omitted). Indeed, parental interests "must be subordinated to the child[]'s interests" in determining the proper disposition of a petition to terminate parental rights. In re G.Y., 904 N.E.2d 1257, 1260 (Ind. 2009).

Indiana Code section 31-35-2-4(b) provides that a petition to terminate parental rights must meet the following relevant requirements:

(2) The petition must allege:

\* \* \*

(B) that one (1) of the following is true:
(i)   There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
(ii)  There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

DCS must prove each element by clear and convincing evidence. G.Y., 904 N.E.2d at 1261; Ind. Code § 31-37-14-2. Clear and convincing evidence need not establish that the continued custody of the parents is wholly inadequate for the child's very survival.

7

<u>Bester v. Lake Cnty. Office of Family & Children</u>, 839 N.E.2d 143, 147 (Ind. 2005). Rather, it is sufficient to show by clear and convincing evidence that the child's emotional development and physical development are put at risk by the parent's custody. <u>Id</u>. If the court finds that the allegations in a petition are true, the court *shall* terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

**Discussion and Decision**

In the present case, Mother argues that DCS failed to prove by clear and convincing evidence that: (a) the conditions that resulted in K.N.'s removal from her care would not be remedied, (b) the continuation of the parent-child relationship poses a threat to K.N.'s well-being, (c) termination is in K.N.'s best interest, and (d) there is a satisfactory plan for K.N.'s care and treatment.[3] We note, however, that Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive, and therefore, the trial court is required to find that only one prong of subsection 4(b)(2)(B) has been established by clear and convincing evidence. <u>In re A.K.</u>, 924 N.E.2d 212, 220 (Ind. Ct. App. 2010).

---

[3]Mother also makes a one-sentence argument that "DCS failed to make reasonable efforts to provide family services or to preserve and reunify the family." Appellant's Br. p. 6. Mother fails to further develop this argument, and we therefore decline to address this issue. <u>See</u> Ind. Appellate Rule 46(A)(8)(a) (noting that each contention in an appellant's brief must be supported by cogent reasoning); <u>Schwartz v. Schwartz</u>, 773 N.E.2d 348, 353 n.5 (Ind. Ct. App. 2002) (noting that failing to make a cogent argument as required by Rule 46(A)(8)(a) results in waiver of the issue on appeal).

Moreover, the provision of family services is *not* a requisite element of our parental rights termination statute, and even a complete failure to provide services would not serve to negate a necessary element of the termination statute and require reversal. <u>See</u> <u>In re H.L.</u>, 915 N.E.2d 145, 148 n.3 (Ind. Ct. App. 2009) (noting that although DCS is generally required to make reasonable efforts to preserve and reunify families during CHINS proceedings, "a failure to provide services does not serve as a basis on which to directly attack a termination order as contrary to law."); <u>In re E.E.</u>, 736 N.E.2d 791, 796 (Ind. Ct. App. 2000) ("the provision of family services is not a requisite element of our parental rights termination statute, and thus, even a complete failure to provide services would not serve to negate a necessary element of the termination statute and require reversal."); <u>Jackson v. Madison County Dep't of Family & Children</u>, 690 N.E.2d 792, 793 (Ind. Ct. App. 1998) (noting that provision of services and counseling designed to reunify the family is not a requirement of the termination statutes), <u>trans. denied</u>.

A. *Conditions that Resulted in Removal Would Not Be Remedied*

As noted above, before the trial court may terminate parental rights, the DCS must prove by clear and convincing evidence that "[t]here is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied." I.C. § 31-35-2-4(b)(2)(B)(i). When making a determination as to whether a reasonable probability exists that the conditions resulting in a child's removal or continued placement outside of a parent's care will not be remedied, the trial court must judge a parent's fitness to care for her child at the time of the termination hearing, taking into consideration evidence of changed circumstances. A.D.S., 987 N.E.2d at 1156-57.

The trial court is also required to consider the parent's habitual patterns of conduct in order to determine the probability of future neglect or deprivation of the child. Id. at 1157. The court may consider evidence of a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment. Id. The trial court may also consider the services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be remedied. Id. DCS is not required to provide evidence ruling out all possibilities of change. Id. Instead, it needs to establish only that a "reasonable probability" exists that the parent's behavior will not change. Id.

Here, considering only the evidence favorable to the trial court's judgment, we cannot say that the trial court clearly erred in determining that such a reasonable probability existed that the conditions that led to K.N.'s removal—Mother's inability to

9

care for K.N. due to her drug use and mental health issues—would not be remedied. Mother claims that she had once again begun drug treatment at the time of the termination hearing. However, Mother had only scheduled an appointment at a counseling center and had not yet actually begun treatment at the time of the termination hearing. Moreover, throughout the course of this case, Mother continued to test positive for drug use, failed to follow through with therapy, missed court-ordered drug screens, and submitted diluted drug screens. Given Mother's past history of not following through on her substance abuse treatment, the trial court was well within its discretion as the trier of fact to conclude that Mother's most recent attempt was a last-ditch effort that was unlikely to succeed.

B. *Continuation of the Parent-Child Relationship Poses a Threat*

Because sufficient evidence supports the trial court's conclusion that a reasonable probability existed that the conditions that resulted in the removal of K.N. from Mother's care would not be remedied, we need not address Mother's next argument regarding the other, disjunctive requirement that a reasonable probability exists that the continuation of the parent-child relationship poses a threat to the well-being of the child. See A.K., 924 N.E.2d at 220. Still, there was ample evidence before the trial court to support such a conclusion.

When reviewing the question of whether continuation of the parent-child relationship poses a threat to the child's well-being, termination is proper when the evidence shows that the emotional and physical development of a child in need of

10

services is threatened. C.A. v. Ind. Dep't of Child Servs., 15 N.E.3d 85, 94 (Ind. Ct. App. 2014).

Here, the trial court, acting as the trier of fact, obviously did not believe Mother's self-serving testimony that her drug use had not affected K.N. Indeed, K.N. himself had already begun to use alcohol and controlled substances and had to undergo substance abuse counseling during the course of the CHINS proceeding. Furthermore, Mother's inconsistent visitation with K.N. was upsetting to the child. Even after Mother was ordered to call ahead for her visitations to ensure that she would arrive, she continued to miss scheduled visitations.

K.N. had also fallen behind educationally when in Mother's care, having excessive absences and making failing grades. Since being removed from Mother's care, K.N.'s grades had improved. Prior to being removed from Mother's care, K.N. was being home-schooled due to anxiety problems. Since being removed from Mother, he has had no problems with anxiety at school. His new school had an Individual Education Program plan in place if K.N. did have anxiety issues, but he had yet to even use this plan due to the lack of anxiety. Under these facts and circumstances, the trial court was again well within its discretion to determine a reasonable probability exists that the continuation of the parent-child relationship poses a threat to K.N.'s well-being.

C. *Best Interests of the Child*

Mother next contends that the trial court clearly erred in concluding that DCS presented evidence sufficient to establish by clear and convincing evidence that termination of the parent-child relationship was in the best interests of K.N. See I.C. §

11

31-35-2-4(b)(2)(C). In determining what is in the best interests of the child, the trial court is required to look beyond the factors identified by the DCS and look to the totality of the evidence. A.D.S., 987 N.E.2d at 1158. In so doing, the court must subordinate the interests of the parent to those of the children. Id. The court need not wait until the children are irreversibly harmed before terminating the parent-child relationship. Id. Moreover, the recommendation by both the case manager and child advocate to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in the child's best interests. Id. at 1158-59. Permanency is a central consideration in determining the best interests of a child. Id. at 1159.

Again, Mother claims that she participated in visitation, acted appropriately toward K.N. during the visitations, and that Mother and K.N. were bonded. We do not doubt that Mother and K.N. have a bond. However, Mother's mental health and substance abuse issues have negatively affected her ability to care for K.N., a troubled young teenager who has already struggled with substance abuse issues. K.N. was behind in his schooling while in Mother's care, yet has improved since being removed. Although it is clear that K.N. is not out of the woods yet, he has shown improvement and was considered by DCS to be "adoptable." Tr. p. 114. With regard to Mother's visitations, we have already noted her sporadic attendance and that her failure to attend scheduled visitations has had a negative impact on K.N. emotionally. The Court Appointed Special Advocate ("CASA") testified that, in her opinion, it was in K.N.'s best interests not to be returned to the care of Mother. One of the DCS caseworkers testified that K.N. needed a

12

stable home, which Mother cannot provide due to her continued problems with mental health and substance abuse. Accordingly, we cannot say that the trial court clearly erred in concluding that termination of the parent-child relationship was in K.N.'s best interests.

D. *Satisfactory Plan for Care and Treatment of Child*

Lastly, Mother claims that DCS failed to show a satisfactory plan is in place for K.N.'s care and treatment. To be sure, in order for the trial court to terminate the parent-child relationship, the trial court must find that a satisfactory plan is in place for the care and treatment of the child. In re Termination of Parent-Child Relationship of D.D., 804 N.E.2d 258, 268 (Ind. Ct. App. 2004). However, such a plan need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. Id.

Here, DCS presented evidence that the plan for the care and treatment of K.N. is adoption. DCS presented evidence that K.N. was "adoptable" and that he had a family member who was willing to adopt him. Tr. p. 114. This pre-adoptive family had already begun to start therapy in preparation for the adoption. This is sufficient to establish that a satisfactory plan for K.N.'s care and treatment is in place. See id.

**Conclusion**

Mother's contentions on appeal amount to little more than a request that we reweigh the evidence, which we will not do. DCS met its burden of proof to show by clear and convincing evidence that there was a reasonable probability that the conditions which resulted in K.N.'s removal from Mother's care would not be remedied, that the continuation of the parent-child relationship posed a threat to K.N.'s well being, that

13

termination of Mother's parental rights was in K.N.'s best interests, and that there was a satisfactory plan for K.N.'s care and treatment. Viewing the evidence favorable to the trial court's judgment, and the reasonable inferences that can be drawn from this evidence, we are unable to say that the trial court's findings of fact or conclusions of law were clearly erroneous. Accordingly, we affirm the judgment of the trial court.

Affirmed.

NAJAM, J., and BRADFORD, J. concur.