## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Dec 29 2017, 11:55 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re The Matter of The Termination of Parent-Child Relationship of: | December 29, 2017 |
| I.B. *(Minor Child)* and J.B. *(Father)* | Court of Appeals Case No. 20A03-1707-JT-1505 |
| *Appellant-Respondent,* | Appeal from the Elkhart Circuit Court |
| v. | The Honorable Michel A. Christofeno, Judge |
| The Indiana Department of Child Services, | The Honorable Deborah Domine, Magistrate |
| *Appellee-Petitioner.* | Trial Court Cause No. 20C01-1701-JT-8 |

**Robb, Judge.**

# Case Summary and Issue

[1] J.B. ("Father") appeals the juvenile court's order terminating his parental rights to his child, I.B. ("Child"). Father raises one issue for our review, which we restate as whether the juvenile court's termination order is supported by clear and convincing evidence. Concluding clear and convincing evidence supports the juvenile court's order, we affirm the termination of Father's parental rights.

# Facts and Procedural History

[2] Child was born on April 29, 2015, to Father and J.U. ("Mother"). On May 14, 2015, the Indiana Department of Child Services ("DCS") removed Child from Mother's care after Child tested positive for cocaine. Mother admitted to using cocaine before she learned of her pregnancy and several times during her pregnancy.[1] On May 15, 2015, the DCS filed a petition alleging Child to be a child in need of services ("CHINS"). The juvenile court adjudicated Child to be a CHINS on May 26, 2015, and placed Child with Father. The juvenile court's dispositional order required Father to enroll in and complete individual therapy, an addictions assessment, home-based case management, and a psychological evaluation. Father did not complete the home-based case management, individual therapy, or a psychological evaluation.

---

[1] Mother voluntarily relinquished her parental rights and does not participate in this appeal.

[3]     In August of 2015, Father was arrested for public intoxication and Child was removed from his custody.[2] The DCS sought to place Child with her paternal grandmother in Michigan through the Interstate Compact for the Placement of Children ("ICPC"). However, the Michigan Department of Child Protective Services denied Child's placement with paternal grandmother because Father lived with paternal grandmother, paternal grandmother did not submit required medical documentation, and two additional children already resided with her in her home. The juvenile court then ordered Child to be placed in foster care. The DCS further recommended Father complete a substance abuse assessment.

[4]     On February 1, 2017, the DCS filed its verified petition for the involuntary termination of Father's parental rights. The juvenile court held an evidentiary hearing over two days, on May 17 and June 2, 2017. Regina Hauptli, the Court Appointed Special Advocate ("CASA"), testified about Father's ability to be a parent to Child:

> The concerns are that there's never been any stability, there's no – there hasn't been any consistency in the past several months. [Father] hasn't followed through with treatment, what was court ordered. He is on probation in Michigan, which doesn't allow him to come to Indiana unless he follows procedures. He has warrants out here in Indiana. He's just not stable for [Child].

---

[2] Father's criminal history includes convictions for driving under the influence in 2001, 2002, 2003, 2005, and 2014. In 2016, Father pleaded guilty in Michigan to operating a vehicle while intoxicated, possession of cocaine, and resisting arrest.

Transcript, Volume III at 38. DCS family case manager Laura Stapleton testified Father missed thirty-five of the ninety visits offered with Child. Father did not testify or present any evidence at the hearings.

[5] Following the hearings, the juvenile court terminated Father's parental rights concluding there is a reasonable probability the continuation of the parent-child relationship poses a threat to Child's well-being and the conditions that led to Child's removal from and placement outside the home would not be remedied. The juvenile court made the following findings of fact and conclusions thereon:

> c. There is a reasonable probability that the conditions that led to the removal of [Child] will not be remedied.
>
> * * *
>
> ii. Neither the past or present CASA, nor the DCS case manager testified that they would recommend placement of [Child] with [Father] at the time of the termination hearing.
>
> iii. At the time of the termination hearing [Father] was living with his mother in Michigan, even though placement of [Child] with her grandmother had been denied twice through the ICPC . . . [and Father] had unstable employment, he had no license to drive, two warrants for his arrest and he was on probation in the state of Michigan.
>
> iv. [A]ccording to the DCS case manager, Laura Stapleton, [Father] had completed none of the services

offered to address the parenting concerns resulting in [Child's] removal from the home.

\* \* \*

vi.     Case manager Stapleton described that [Father] has not been consistent in participating in court ordered individual therapy, was not consistent in following the recommendations of his addictions assessment, he did not fully comply with case management, and he never completed the psychological evaluation . . . . [Father] was never consistent in visits with [Child].

vii.     [Father] has exhibited an unwillingness to cooperate with services offered and the case manager and CASAs are not recommending [Child] return to [Father's] care because all three opined that conditions have not changed.

viii.     [Father's] pattern of unwillingness to cooperate with services . . . and conditions that continue to be unchanged support a finding that there is a reasonable probability that conditions will not change . . . .

Appealed Order at 6-7. Father now appeals.

# Discussion and Decision

[6]     The Fourteenth Amendment to the United States Constitution protects the right of parents to establish a home and raise their children. *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013). However, the law provides for the termination of that right when parents are unwilling or unable to meet their parental responsibilities. *In re Bester*, 839 N.E.2d 143, 147 (Ind. 2005). The termination

of parental rights is not intended to punish parents, but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*, *cert. denied* 534 U.S. 1161 (2002).

When reviewing the termination of parental rights, we will not weigh the evidence or judge the credibility of the witnesses. *K.T.K.*, 989 N.E.2d at 1229. Rather, we consider only the evidence and reasonable inferences that support the judgment. *Id.* Where a juvenile court has entered findings of fact and conclusions thereon, we will not set aside the juvenile court's findings or judgment unless they are clearly erroneous. *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, we review the juvenile court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *Id.* at 1229-30.

A petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
>> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>>
>> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> * * *
>
> (C) that termination is in the best interests of the child . . . .

Ind. Code § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. Ind. Code § 31-37-14-2.

[9] Father does not challenge any of the juvenile court's findings of fact, only whether the DCS presented sufficient evidence to support the termination of his parental rights. Specifically, he contends the evidence is insufficient to show (1) a reasonable probability the conditions that resulted in Child's removal or the reasons for placement outside Father's home will not be remedied; (2) a reasonable probability a continuation of the parent-child relationship poses a threat to Child's well-being; and (3) termination of Father's parental rights is in Child's best interest.

[10] In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.*, 4 N.E.3d 636, 642-43 (Ind. 2014). First, we identify the conditions that led to a child's removal or placement outside the home; and second, we determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* at 643. The second step requires juvenile courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Habitual conduct may include a parent's prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and a lack of adequate housing and employment. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157

(Ind. Ct. App. 2013), *trans. denied*. The juvenile court may also consider services offered to the parent by the DCS and the parent's response to those services as evidence of whether conditions will be remedied. *Id.*

[11] The DCS removed Child from Father's care following his arrest for public intoxication, which was his seventh alcohol-related arrest. In the twenty months following Child's removal, Father completed none of the services offered by the DCS to address the concerns resulting in Child's removal from his care. *See In re L.S.*, 717 N.E.2d at 210 (noting a parent's unwillingness to remedy parenting problems and to cooperate with social services, along with unchanged conditions, supports a finding there is a reasonable probability conditions will not change). Moreover, at the time of the termination hearing, Father was on probation in Michigan and had two outstanding warrants for arrest in Indiana. Father also missed over one-third of his ninety opportunities to visit and spend time with Child. Although we disagree with the DCS' classification of Father's housing situation as unstable, as it appears he has lived with his mother for some time now, the Michigan Department of Child Protective Services denied Child's placement at paternal grandmother's home citing, among other things, Father's presence there and concern for paternal grandmother's ability to parent Child and two additional children.

[12] Father had almost two years to complete the services offered by the DCS in order to remedy the concerns that led to Child's removal. Rather than complete them, Father remained inconsistent and failed to establish any meaningful relationship with Child. Father's unwillingness to complete these services, his

encounters with law enforcement, outstanding warrants for his arrest, and the numerous missed visitations with Child lead to the conclusion the issues resulting in Child's removal from his care will not be remedied. The juvenile court did not clearly err in concluding the evidence shows a reasonable probability the conditions resulting in the Child's removal will not be remedied.[3]

[13] Father also contends DCS failed to prove termination was in Child's best interest. "In determining what is in the best interests of the child, the [juvenile] court is required to look beyond the factors identified by the DCS and look to the totality of the evidence." *In re H.L.*, 915 N.E.2d 145, 149 (Ind. Ct. App. 2009).

> The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. Recommendations of the case manager and court-appointed advocate, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests.

*In re A.S.*, 17 N.E.3d 994, 1005 (Ind. Ct. App. 2014) (citations omitted), *trans. denied*.

---

[3] We note that because Indiana Code section 31-35-2-4(b)(2) is written in the disjunctive, the DCS is required to establish by clear and convincing evidence only one of the requirements of subsection (B). *In re A.K.*, 924 N.E.2d 212, 220 (Ind. Ct. App. 2010), *trans. dismissed*. Father also argues there is insufficient evidence to show a reasonable probability a continuation of the parent-child relationship poses a threat to Child's well-being; however, having concluded there is sufficient evidence to support the juvenile court's conclusion the conditions will not be remedied, we need not address this argument.

[14]    As noted above, there is sufficient evidence that the conditions resulting in Child's removal will not be remedied. In addition, both the CASA and the DCS case manager opined it would be in Child's best interest for Father's parental rights to be terminated. *See* Tr., Vol. II at 213, 233. Accordingly, this is sufficient to show by clear and convincing evidence that termination is in Child's best interests. *See id.*

[15]    Further, we note "[p]ermanency is a central consideration in determining the best interests of a child." *A.D.S.*, 987 N.E.2d at 1159. Here, Child has been in foster care for a majority of her life and her foster parents intend to adopt her. We therefore conclude the DCS established by clear and convincing evidence that termination of Father's parental rights is in the best interests of Child.

# Conclusion

[16]    The DCS established by clear and convincing evidence the elements necessary to support the termination of Father's parental rights. The judgment of the juvenile court terminating Father's parental rights is affirmed.

[17]    Affirmed.

Crone, J., and Bradford, J., concur.