## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 18 2020, 8:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Kimberly A. Jackson
Indianapolis, Indiana
for Mother

Leanna Weissmann
Lawrenceburg, Indiana
for Father

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Robert J. Henke
Deputy Attorneys General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of D.Y., Mother, T.W., Father, and A.W., Minor Child,

 D.Y. and T.W.,

*Appellants-Respondents,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

February 18, 2020

Court of Appeals Case No.
19A-JT-1559

Appeal from the
 Knox Superior Court

The Honorable
Gara U. Lee, Judge

Trial Court Cause No.
42D01-1812-JT-33

**Kirsch, Judge.**

[1] D.Y. ("Mother") and T.W. ("Father") (together, "Parents") separately appeal the trial court's order terminating their parental rights to their daughter, A.W. ("Child"). On appeal, Parents raise the following restated issues for review:

I. Whether the Indiana Department of Child Services ("IDCS") deprived them of due process by its failure to properly and timely respond to Parents' discovery requests; and

II. Whether IDCS failed to prove by clear and convincing evidence that their parental rights should be terminated.

[2] We affirm.

## Facts and Procedural History

[3] On January 20, 2017, Mother admitted smoking K2 and possessing paraphernalia. Mother was arrested for violating her probation. Because Father was also incarcerated, Child was placed in the care of Maternal Grandmother.

[4] On February 11, 2017, IDCS received a report that Maternal Grandmother was using methamphetamine and was "high on Klonopin." *Ex. Vol. 1* at 21. Maternal Grandmother submitted to a drug screen and told the IDCS case manager that it would be positive for methamphetamine. *Id*. at 22. IDCS removed the Child from Maternal Grandmother and placed her with other relatives.

[5] On February 14, 2017, IDCS filed its petition alleging that Child was a child in need of services ("CHINS") based on (1) the incarceration of both of her parents and (2) Maternal Grandmother's use of methamphetamine while caring for Child. The trial court adjudicated Child a CHINS on April 27, 2017 and granted IDCS wardship of Child on May 15, 2017.

[6] At the hearing on May 15, 2017, the trial court entered its dispositional order directing Parents to take a number of actions related to their parenting. At the time, Mother was scheduled to be out on work release on November 6, 2017. Mother admitted that she relapsed in December 2017 and that she had "started using again." *Id*. at 163. In February 2018, Mother was arrested for assisting a criminal, and her probation was revoked. Father was released on parole in July 2017, but he was returned to prison for possession of K-2.

[7] On June 11, 2018, the trial court found that Mother was only partially compliant and Father was non-compliant. The Court adopted a permanency plan that included adoption. In November 2018, the Trial Court found that parents had not visited Child and had not complied with the case plan. At that time, Mother was incarcerated again, and although Father had been released from incarceration during the summer, he was not participating in services.

[8] On December 7, 2018, IDCS filed a petition to terminate Parents' parental rights to Child. A termination hearing was held. At the time of the hearing, Mother was residing in an apartment as part of the Life After Meth program but did not know how long she would reside there. *Tr. Vol. 2* at 84. Father was

again incarcerated after his work release was revoked. *Tr. Vol. 3* at 21. On July 8, 2019, the trial court entered its order terminating Parents' parental rights. Mother and Father now appeal.

# Discussion and Decision

## I.   Discovery Requests

[9]   The trial court held its initial hearing on IDCS's termination request on December 10, 2018 and set fact-finding to commence on March 4, 2019. On February 25, 2019, seventy-six days after the initial hearing in this cause and seven days before the commencement of the termination hearing, Mother propounded her discovery requests.

[10]   Waiver is the intentional relinquishment of a known right. *Am. Nat'l. Bank & Trust Co. v. St. Joseph Valley Bank*, 391 N.E.2d 685, 687 (Ind. Ct. App. 1979). Indiana Trial Rule 33(c) provides a period of thirty-three days for a party's response to a discovery request. After her tender of discovery, the trial court on two occasions offered Mother a continuance so that the court could compel IDCS to provide answers to Mother's discovery requests. Mother declined the trial court's offers and stated that she was prepared to proceed. By doing so, Mother waived any obligation on the part of IDCS to provide the discovery.

## II.   Termination Order

[11]   To terminate the parent-child relationship, Indiana Code section 31-35-2-4(b)(2) requires the State to allege and prove by clear and convincing evidence that there is a reasonable probability that the condition that resulted in the child's

removal or the reasons for placement outside the home of the parents will not be remedied or that there is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child. Ind. Code § 31-35-2-4(b)(2)(B). In addition, IDCS must show that termination is in the best interests of the child and that there is a satisfactory plan for the care and treatment of the child. Ind. Code § 31-35-2-4(b)(2)(C), (D).

[12] To determine whether the conditions that led to the child's placement outside the home will not be remedied, we engage in a two-step analysis. *K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1231 (Ind. 2013). First, we must determine what conditions led to their placement and retention in foster care, and second, we must determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* In the second step, the trial court must judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions and balancing a parent's recent improvements against "'habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation.'" *E.M. v. Ind. Dep't of Child Servs.*, 4 N.E.3d 636, 643 (Ind. 2014) (quoting *K.T.K.*, 989 N.E.2d at 1231).

[13] Here, the conditions that led to Child's removal from Parents' care were Mother's incarceration due to drug use and Father's incarceration. There was significant evidence demonstrating Parents' habitual patterns of conduct in failing to address their drug problems and in failing to provide a safe, consistent, nurturing residence and environment for Child. The trial court

found that the history of inconsistent compliance by both Mother and Father was an indicator of future behavior. When Mother was not in a structured environment, she abused drugs and engaged in criminal conduct. Mother's history shows that she is unlikely to remain sober and avoid criminal activities. Father's criminal history dates back to 2011. He was incarcerated for much of the proceedings and admitted that, when he was not incarcerated, he was only able to remain drug free for a month. The evidence presented supported the conclusion that there was a reasonable probability that the reasons for Child's continued placement outside Parents' home would not be remedied.[1]

[14] In determining what is in the best interests of the child, a trial court is required to look at the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010) (citing *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App. 2004), *trans. denied*), *trans. dismissed*. In doing so, the trial court must subordinate the interests of the parents to those of the child involved. *Id*. Termination of a parent-child relationship is proper where the child's emotional and physical development is threatened. *Id*. (citing *In re R.S.*, 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied*). A parent's historical inability to provide a suitable, stable home environment along with the parent's current inability to do so

---

[1] We do not have to address the issue of whether there was a reasonable probability that the continuation of the parent-child relationship posed a threat to Child's well-being because Indiana Code section 31-35-2-4(b)(2)(B) is written such that, to properly effectuate the termination of parental rights, the juvenile court need only find that one of the three requirements of subsection (b)(2)(B) has been established by clear and convincing evidence. *A.D.S. v. Ind. Dep't Child Servs.*, 987 N.E.2d 1150, 1156 (Ind. Ct. App. 2013), *trans. denied*.

supports a finding that termination is in the best interest of the child. *In re A.P.*, 981 N.E.2d 75, 82 (Ind. Ct. App. 2012). The trial court need not wait until the child is irreversibly harmed such that her physical, mental and social development is permanently impaired before terminating the parent-child relationship. *In re A.K.*, 924 N.E.2d at 224.

[15] In light of the overwhelming evidence of Parents' criminal activities, long periods of incarceration, and drug use, we conclude that Child's emotional and physical development would be threatened if she remained in Parents' custody. Accordingly, we hold that the evidence supported the trial court's determination that termination of Parents' parental rights was in Child's best interests.

[16] Based on the record before us, we cannot say that the trial court's termination of Parents' parental rights to Child was clearly erroneous. We, therefore, affirm the trial court's judgment.

[17] Affirmed.

Bailey, J., and Mathias, J., concur.