## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 10 2015, 8:43 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT A.A.-S.

Harold Amstutz
Lafayette, Indiana

ATTORNEY FOR APPELLANT T.S.

Michael B. Troemel
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Involuntary Termination of the Parent-Child Relationship of I.A., Minor Child, and his Father, A.A.-S, and Mother, T.S.

A.A.-S. and T.S.,

*Appellants-Respondents,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner,*

September 10, 2015

Court of Appeals Case No. 79A02-1501-JT-34

Appeal from the Tippecanoe Superior Court

The Honorable Faith Graham, Judge

Trial Court Cause No. 79D03-1408-JT-34

**Vaidik, Chief Judge.**

# Case Summary

[1]     T.S. (Mother) and A.A.-S. (Father) appeal the termination of their parental rights to their son, twelve-year-old I.A.  They challenge the sufficiency of the evidence underlying the trial court's termination order.  However, I.A. has been institutionalized for the past five years, and during that time, Father has not contacted I.A., and Mother has not maintained stable employment or housing or abstained from alcohol and drug use.  In addition, Department of Child Services' (DCS) plan for I.A. is adoption.  Concluding that there is sufficient evidence to support the trial court's decision to terminate the parent-child relationship, we affirm.

# Facts and Procedural History

[2]     Thirty-eight-year-old Mother and thirty-six-year-old Father are the parents of I.A., who was born in November 2002.  Mother is also the parent of J.B., who was born in September 2001, and Z.G., who was born in January 2005.[1]

---

[1] Mother's parental relationships with J.B. and Z.G. were terminated at different times in 2012.  This Court affirmed both terminations.  *See T.S. v. Ind. Dep't of Child Servs.,* Case No. 79A02-1211-JT-891 (Ind. Ct. App. Aug. 14, 2013), and *T.S. v. Ind. Dep't of Child Servs.,* Case No. 79A02-1202-JT-102 (Ind. Ct. App. Sept. 11, 2012).  We include facts relating to the other children only as necessary to address the termination of the parent-child relationship between Mother and I.A.

[3] I.A.'s meconium tested positive for marijuana at birth in November 2002. Mother failed to successfully complete a Service Referral Agreement resulting from I.A.'s positive drug test and continued to use marijuana. I.A. and J.B. were subsequently removed from the home and placed in foster care for five months in 2003, and a Child in Need of Services (CHINS) case was opened. I.A. and J.B. were returned to Mother in 2003 when the CHINS case was dismissed. At some point, I.A. received mental-health services from Wabash Valley Alliance. Father left the family's home when I.A. was two months old.

[4] On July 27, 2009, six-year-old I.A. pushed four-year-old Z.G. out of a second-story window at Mother's residence in Lafayette. While at the hospital with Z.G., Mother left J.B. and I.A. in the care of her mother. Two days later, while still in their grandmother's care, diabetic J.B. suffered a nearly fatal overdose of insulin from an unknown cause and was life-lined to a hospital in Indianapolis.

[5] I.A. and his siblings were placed in protective custody pursuant to a CHINS detention hearing order issued on July 31, 2009, and a Court-Appointed Special Advocate (CASA) was appointed to represent them. After DCS filed the CHINS petition, I.A. remained in foster care until August 19, 2009, when he was admitted to Valle Vista Hospital for mental health services. One week later he was transferred to Evansville Psychiatric Hospital because of his aggression.

[6] While I.A. was at the Evansville hospital, all of the children were adjudicated to be CHINS on October 27, 2009. Pursuant to the dispositional order, Mother was required to participate in specific court-ordered services, find and maintain

stable employment and housing, and abstain from all alcohol and drug use. Father was ordered to stay in contact with DCS and to submit to random urine drug screens.

[7] On November 12, 2009, I.A., who was diagnosed with bipolar disorder, attention-deficit/hyperactivity disorder, oppositional-defiant disorder, borderline intellectual functioning, reactive-attachment disorder, and pervasive developmental disorder, was transferred to the residential program at Damar Services in Indianapolis. Two years later, in December 2011, I.A. was placed in therapeutic foster care. After I.A. became increasingly aggressive toward the foster family, he was placed at Options Treatment Center. In April 2014, I.A. was transferred to Lutherwood. Four months later, DCS filed a petition to terminate I.A.'s parental relationship with both parents.

[8] Testimony at the November 19, 2014 termination hearing revealed that in 2009, Father did not contact DCS when he discovered that his son had been removed from Mother's home. He subsequently attempted to make contact with his son while I.A. was at Damar. However, when Father learned that he would need to "go through the proper steps" to visit his son, Father did not pursue the matter and had no further contact with his son or DCS until the termination petition was filed five years later. Tr. p. 45. Father lived in Indianapolis during that time.

[9] Also at the hearing, I.A.'s DCS caseworker testified that I.A. had been addressing his Father's lack of involvement in his life during therapy. The

caseworker pointed out the "tremendous period of separation" between I.A. and his father and opined that the termination of Father's parental rights was in I.A.'s best interests. *Id.* at 71. The CASA also testified that it was in I.A.'s best interests to terminate Father's parental rights.

[10] The testimony at the hearing further revealed that during the five years when I.A. was institutionalized, Mother did not find stable employment or housing, and she did not abstain from alcohol and drug use. Specifically, Mother had a positive drug test just one month before the termination hearing. At the time of the hearing, Mother lived with a boyfriend who had substance-abuse and violence issues as well as a criminal background. In addition, just three to six months before the termination hearing, Mother missed multiple visits with I.A., which "catapulted and spiraled him into a bad place." *Id.* at 113. The DCS caseworker testified that it was in I.A.'s best interests to terminate Mother's parental rights to give I.A. closure so that he could move forward. The CASA agreed with this recommendation.

[11] Last, the DCS caseworker testified that I.A.'s behavior had improved over the past few months and that despite his "behavioral struggles . . . he has a lot of good qualities." *Id.* at 64. The caseworker further testified that the plan for I.A. was adoption. Specifically, she testified that there are families who are currently interested in adopting I.A., including the family that adopted one of I.A.'s brothers. Following the hearing, the trial court terminated the parental rights of both parents.

Mother and Father now appeal.

# Discussion and Decision

Each parent separately appeals the trial court's order terminating his or her parental rights. Specifically, Father argues that there is insufficient evidence that 1) there is a reasonable probability that the conditions that resulted in I.A.'s removal or the reasons for placement outside the parents' home will not be remedied and that a continuation of the parent-child relationship poses a threat to I.A.'s well-being; 2) termination is in I.A.'s best interests; and 3) there is a satisfactory plan for I.A.'s care and treatment. Mother argues that there is insufficient evidence that 1) termination is in I.A.'s best interests; and 2) there is a satisfactory plan for I.A.'s care and treatment.

The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013). However, the law provides for termination of that right when the parents are unwilling or unable to meet their parental responsibilities. *In re Bester,* 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *K.T.K.,* 989 N.E.2d at 1229.

Rather, we consider only the evidence and reasonable inferences that support the judgment. *Id.* Where a trial court has entered findings of fact and conclusions thereon, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *Id.*

[16] A petition to terminate parental rights must allege:

(A) that one (1) of the following is true:

    (i)    The child has been removed from the parent for at least six (6) months under a dispositional decree.

    (ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

    (iii)    The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K..* 989 N.E.2d at 1231.

# 1. Conditions Remedied

[17] Father first argues that there is insufficient evidence that there is a reasonable probability that the conditions that resulted in I.A.'s removal or the reasons for placement outside the parents' home will not be remedied and that a continuation of the parent-child relationship poses a threat to I.A.'s well-being.

[18] At the outset we note that Indiana Code section 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, DCS is required to establish, by clear and convincing evidence, only one of the three requirements of subsection (B). We therefore discuss only whether there is a reasonable probability that the

conditions that resulted in the I.A.'s removal or the reasons for his placement outside the parents' home will not be remedied.

[19] In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions, and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* In so doing, trial courts have discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination, and courts may find that a parent's past behavior is the best predictor of his or her future behavior. *Id.*

[20] Testimony at the hearing revealed that Father has had no contact with I.A. for five years. During that time, Father attempted to visit I.A. one time at Damar, but he did not pursue the visitation when he learned that he would have to "go through the proper steps." Tr. p. 45. In addition, the DCS caseworker and the CASA both testified that termination of Father's parental rights was in I.A.'s best interests so that I.A. could move forward.

Based on this evidence, the trial court found the following: Father has remained entirely absent making no efforts toward reunification; Father's historical lack of effort to parent I.A. would not change even though Father attended the termination hearing; introducing Father to I.A.'s life at this point would be detrimental to I.A.; and I.A. needs permanency. The trial court's conclusion that there was a reasonable probability that the conditions resulting in I.A.'s removal or the reasons for his placement outside the home would not be remedied is not clearly erroneous.

## 2. Best Interests

Both parents also contend that there is insufficient evidence that termination of their parental rights was in I.A.'s best interests. In determining what is in a child's best interests, the trial court must look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied.* In so doing, the trial court must subordinate the interests of the parent to those of the child. *Id.* The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. *Id.* Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of service providers may support a finding that termination is in the child's best interests. *In re A.S.,* 924 N.E.2d 212, 224 (Ind. Ct. App. 2010), *trans. dismissed.*

Here, both the DCS caseworker and the CASA testified that terminating both parents' parental rights is in I.A.'s best interests. In addition, the trial court

pointed out that I.A. needs permanency after spending five years in institutions while waiting for his mother to find stable employment and housing and abstain from using alcohol and drugs and his father to contact DCS. DCS has proven by clear and convincing evidence that termination of the parent-child relationship with both parents is in I.A.'s best interests. *See In re S.P.H.*, 806 N.E.2d 874, 883 (Ind. Ct. App. 2004) (children's needs are too substantial to force them to wait while determining if their parents will be able to parent them).

## 3. Satisfactory Plan

[24] Last, both parents contend that there is insufficient evidence of a satisfactory plan for I.A.'s care and treatment. Indiana courts have traditionally held that for a plan to be satisfactory for the purposes of the termination statute, it need not be detailed so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. *In re A.S.*, 17 N.E.3d 994, 1007 (Ind. Ct. App. 2014), *trans. denied*. A plan to attempt to find suitable parents to adopt the child is satisfactory. *Id.* There need not be a guarantee that a suitable adoption will take place, only that DCS will attempt to find a suitable adoptive parent.

[25] Here, the DCS caseworker testified that the plan for I.A. is adoption. Specifically, she testified that there are families who are currently interested in adopting I.A., including the family that adopted one of I.A.'s brothers. This is

sufficient evidence of a satisfactory plan for I.A.'s care and treatment, and the trial court's judgment is not clearly erroneous.

[26] Affirmed.

PYLE, J., and ROBB, J., concur.