## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 19 2015, 9:52 am

CLERK
of the supreme court,
court of appeals and
tax court

| ATTORNEY FOR APPELLANT | ATTORNEY FOR APPELLEE |
|---|---|
| Julianne L. Fox<br>Evansville, Indiana | Gregory F. Zoeller<br>Attorney General of Indiana<br><br>Robert J. Henke<br>Abigail R. Recker<br>Deputy Attorneys General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Involuntary Termination of the Parent-Child Relationship of T.N., H.N., and S.W., Minor Children, and their Mother, A.N.,<br><br>A.N.,<br><br>*Appellant-Respondent,*<br><br>v.<br><br>Indiana Department of Child Services,<br><br>*Appellee-Petitioner,* | October 19, 2015<br><br>Court of Appeals Case No. 87A01-1412-JT-550<br><br>Appeal from the Warrick Circuit Court<br><br>The Honorable Jill Marcum, Special Judge<br><br>Lower Court Cause Nos.<br>87C01-1403-JT-49<br>87C01-1403-JT-50<br>87C01-1403-JT-51 |

**Vaidik, Chief Judge.**

# Case Summary

[1] A.N. ("Mother") appeals the termination of her parental rights to her three children. She argues that the trial court erred in denying her motion to continue the termination hearing and that there is insufficient evidence to support the trial court's termination order. Because Mother was present in court when the hearing was scheduled but voluntarily moved to Tennessee shortly before it was held, the trial court did not err in denying Mother's motion. Further, Mother's eleven-year history with DCS, in combination with her current failure to comply with the trial court's order regarding illegal drug use, visitation, employment, and housing, leads us to conclude that there is sufficient evidence to support the termination order. We affirm.

# Facts and Procedural History

[2] Twenty-nine-year-old Mother is the parent of a twelve-year-old son, T.N., a seven-year-old daughter, H.N., and a six-year-old daughter, S.W. Mother has an eleven-year history with DCS, which includes substantiations of neglect of T.N. in 2003, 2004, 2005, and of all three children in 2009.

[3] In June 2012, DCS received a report alleging that Mother's home was "disgusting," and her children were not properly supervised. Intake Officer's Report of Preliminary Inquiry and Investigation, DCS Exhibit 1.[1] When a DCS

---

[1] We note that the court reporter has failed to paginate approximately 500 pages of exhibits, which are contained in two volumes and has failed to include an accurate index of the exhibits as required by Indiana

family case manager arrived at the scene, she noticed that the home contained flies, rotting food, rodent feces, a raw piece of chicken on a mattress in the living room, and dirty dishes on the bathroom floor. S.W. had recently been seen running naked through the trailer park where the family lived, and H.N. needed stitches after climbing through a window and falling on broken glass. All of the children were covered in dirt and did not appear to have recently bathed. Mother refused a drug screen and explained that it would be positive for marijuana. Mother's partner, L.P., who lived with the family, also refused a drug screen and explained that it would be positive for cocaine and marijuana.

[4] Mother was charged with two counts of neglect of a dependent, one as a Class D felony and one as a Class C felony. Two days later, DCS filed a petition alleging that the three children were children in need of services (CHINS). Following a fact finding hearing in August 2012, the trial court adjudicated the children to be CHINS. Following a dispositional hearing, on September 5, 2012, the trial court ordered Mother and her partner to complete a parenting assessment; submit to random drug tests within one hour of request; refrain from using illegal substances; maintain a safe, stable, and clean living environment; visit regularly with children; complete a mental health evaluation and follow all recommendations; and cooperate with service providers and follow their recommendations. Mother, however, failed to comply with the

Appellate Rule 29(A). This failure to comply with the appellate rules has impeded our review of and citation to the record.

court's order, including a provision that she address her previous diagnosis of ADHD and bi-polar disorder to better understand her children's mental health needs.

[5] In January 2014, DCS reported that Mother continued to be noncompliant and that she was homeless and unemployed. On March 17, 2014, DCS filed a petition to terminate Mother's parental rights. The termination hearing was originally scheduled for June 17, 2014. Mother was present in court that day when the trial court rescheduled the hearing for August 18. By August, however, Mother and her partner had moved to Tennessee, and Mother failed to attend the termination hearing. Mother requested a continuance, which the trial court denied.

[6] Testimony at the hearing revealed that Mother completed a mental health evaluation but failed to follow through with recommendations for individual therapy and parenting classes. From February 2013 through November 2013, Mother had seventeen urine drug screens that tested positive for a variety of drugs, including THC, amphetamines, methamphetamine, cocaine, bath salts, and pentanoic acid.[2] On some days, Mother refused to submit to urine drug screens.

---

[2] Pentanoic acid is a synthetic cannabinoid compound. *See* www.ameritox.com/k2-spice-drug-test-synthetic-marijuana-urine-drug-testing/ (last visited October 7, 2015).

In addition, Mother failed to consistently visit her children. After DCS received a report that Mother had fondled H.N. during an unsupervised visit, and that this behavior had occurred on several occasions, Mother's visits were ordered to be supervised.[3] In July 2014, Mother informed DCS that she was moving to Tennessee and would not be back to Indiana for visits. Mother also failed to demonstrate stable employment and housing. Specifically, Mother has lived with her mother, with a family friend, in a motel, and on a park bench.

Testimony about the children revealed that T.N. exhibits inappropriate sexual behaviors, including taking off his clothes in front of his sisters and foster siblings and kissing his five-year-old foster sister. Psychological evaluations revealed that T.N. suffers from autism, ADHD, an anxiety disorder, an undersocialized aggressive behavior disorder, mixed specific learning problems, and multiple forms of child abuse. Mother failed to understand her son's mental health issues, and indicated to his DCS case manager that he might "just [be] a pervert." Tr. p. 110. At the time of the termination hearing, T.N. had been removed from his foster home and placed in a facility.

---

[3] In this regard, an August 30, 2013, DCS progress report stated as follows:

> There have been concerns of sexual abuse between [Mother] and the girls. In addition, both [T.N.] and [H.N.] have been sexually acting out at the foster home. [H.N.] was licking her Barbie dolls' "private parts" and stated she was having sex with the doll. She went on to say that "that was how Mommy did it."

Progress Report, DCS Exhibit 1.

[9]     As for the girls, H.N. was diagnosed with ADHD, undersocialized aggressive behavior disorder, post-traumatic stress disorder, reactive attachment disorder, intellectual development disorder, a learning disorder, and multiple forms of child abuse. Similarly, S.W. has been diagnosed with ADD, neglect, physical and sexual abuse, and academic delay. Her assessment reveals that she has been sexually victimized by her siblings and has experienced issues with sleep and waking up at night, which could indicate the start of post-traumatic stress symptoms. At the time of the termination hearing, both girls lived with the same foster family.

[10]     Also at the hearing, Court-Appointed Special Advocate (CASA) Linda O'Neill testified that she was "impressed by [] the amount of services that were offered to help [Mother] overcome her situation that she was in at the time. She was given plenty of opportunities to improve her situation." *Id.* at 41. O'Neill further testified that the plan for the care of the children was adoption and that adoption was in the children's best interests. DCS case worker Nichole Baldwin testified that termination was in the children's best interests.

[11]     Following the hearing, the trial court issued an ordering terminating Mother's parental relationships with all three children on October 16, 2014. Mother appeals.

# Discussion and Decision

The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013). However, the law provides for termination of that right when the parents are unwilling or unable to meet their parental responsibilities. *In re Bester,* 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the parents, but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

When reviewing the termination of parental rights, we will not reweigh the evidence or judge the credibility of the witnesses. *K.T.K.,* 989 N.E.2d at 1229. Rather, we consider only the evidence and reasonable inferences that support the judgment. *Id.* Where a trial court has entered findings of fact and conclusions thereon, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *Id*.

A petition to terminate parental rights must allege:

> (A) that one (1) of the following is true:

(i)     The child has been removed from the parent for at least six (6) months under a dispositional decree.

(ii)    A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of the court's finding, the date of the finding, and the manner in which the finding was made.

(iii)   The child has been removed from the parent and has been under the supervision of a local office or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)   The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*. 989 N.E.2d at 1231.

Here, Mother first argues that the trial court erred in denying her motion for a continuance. She further argues that there is insufficient evidence to support the termination of her parental rights. Specifically, she contends that there is insufficient evidence that 1) there is a reasonable probability that the conditions that resulted in her children's removal or the reasons for placement outside the parent's home will not be remedied; 2) termination is in her children's best interests; and 3) there is a satisfactory plan for the children's care and treatment.

## 1. Motion for a Continuance

Mother first argues that the trial court abused its discretion in denying her motion for a continuance. Specifically, Mother claims that although she was "present when the hearing was set, counsel's request for the continuance should have been granted as Mother had been present for the other CHINS hearings and did not have a history of failures to appear on the chronological case summaries." Appellant's Br. p. 6. Mother further explains that she simply lacked transportation to the hearing from Tennessee.

The decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court. *Rowlett v. Vanderburgh Cnty. OFC*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2006), *trans. denied.* We will reverse the trial court only for an abuse of that discretion. *Id.* An abuse of discretion may be found in the denial of a motion for a continuance when the moving party has shown good

cause for granting the motion. *Id.* However, no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial. *Id.* There is always a strong presumption that the trial court properly exercised its discretion. *Elmore v. State*, 657 N.E.2d 1216, 1218 (Ind. 1995). The party seeking a continuance must also show that he or she is "free from fault." *Danner v. Danner* 573 N.E.2d 934, 937 (Ind. Ct. App. 1991), *trans. denied*.

[18] Here, our review of the evidence reveals that Mother was aware of the hearing date and had counsel to represent her. She nevertheless chose to move to Tennessee shortly before the hearing. We agree with the State that "Mother knew that when she moved to Tennessee that she would have difficulty attending [the] hearing and staying a part of [her] [c]hildren's lives, yet she chose to do so anyway." Appellee's Br. p. 15. We further note that all of the witnesses were ready to testify on the day of the hearing. Based on these facts, and in light of the strong presumption that the trial court properly exercised its discretion, the trial court did not abuse its discretion in denying Mother's motion for a continuance.

## 2. Conditions Remedied

[19] Mother next argues there is insufficient evidence that there is a reasonable probability that the conditions that resulted in her children's removal will not be remedied. In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a

two-step analysis. *In re E.M.*, 4 N.E.3d 636, 643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions, and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* In so doing, trial courts have discretion to weigh a parent's prior history more heavily than efforts made only shortly before termination, and courts may find that a parent's past behavior is the best predictor of his or her future behavior. *Id.*

[20] Here, our review of the evidence reveals that Mother, who has an eleven-year history with DCS, failed to follow the trial court's order regarding mental health treatment, continued to use illegal drugs, told DCS she was moving to Tennessee and would not return for visits with her children, and failed to obtain stable employment and housing. In addition, all three children have multiple diagnoses, including T.N.'s inappropriate sexual behaviors, which Mother fails to understand. Based on this evidence, the trial court's conclusion that there was a reasonable probability that the conditions resulting in the children's removal would not be remedied is not clearly erroneous.

# 3. Best Interests

Mother also contends that there is insufficient evidence that termination of her parental rights was in her children's best interests. In determining what is in a child's best interests, the trial court must look to the totality of the evidence. *In re A.D.S.*, 987 N.E.2d 1150, 1158 (Ind. Ct. App. 2013), *trans. denied.* In so doing, the trial court must subordinate the interests of the parent to those of the child. *Id.* The court need not wait until a child is irreversibly harmed before terminating the parent-child relationship. *Id.* Additionally, a child's need for permanency is an important consideration in determining the best interests of a child, and the testimony of service providers may support a finding that termination is in the child's best interests. *In re A.S.,* 924 N.E.2d 212, 224 (Ind. Ct. App. 2010), *trans. dismissed.*

Here, both the DCS caseworker and the CASA testified that terminating Mother's parental rights is in the children's best interests. In addition, the evidence presented showed that Mother was not able to provide for her children's needs and to provide them with the necessary stability and permanency. At the time of the hearing, Mother was unemployed and did not have adequate stable housing for her children. In addition, Mother continued to test positive for controlled substances and failed to follow the recommendations of mental health professionals.

A parent's historical inability to provide a suitable environment along with the parent's current inability to do the same supports a finding that termination of

parental rights is in the best interests of the children. *In re A.P.*, 981 N.E.2d 75, 82 (Ind. Ct. App. 2012). Here, DCS has proven by clear and convincing evidence that terminating Mother's parental relationship with her three children is in the children's best interests.

# 4. Satisfactory Plan

[23] Last, Mother contends that there is insufficient evidence of a satisfactory plan for the care and treatment of her children. Indiana courts have traditionally held that for a plan to be satisfactory for the purposes of the termination statute, it need not be detailed so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated. *In re A.S.*, 17 N.E.3d 994, 1007 (Ind. Ct. App. 2014), *trans. denied*. A plan to attempt to find suitable parents to adopt the child is satisfactory. *Id.* There need not be a guarantee that a suitable adoption will take place, only that DCS will attempt to find a suitable adoptive parent. *Id.* Here, the DCS caseworker testified that the plan for the children is adoption. This is sufficient evidence of a satisfactory plan for children's care and treatment, and the trial court's judgment is not clearly erroneous.

[24] Affirmed.

Robb, J., and Pyle, J., concur.