## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 15 2017, 9:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Brian K. Alsip
Alsip Law Office, P.C.
Franklin, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Andrea E. Rahman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In Re the Termination of the Parent-Child Relationship of:

M.R. and M.R.

J.S. and K.G.,

*Appellants-Respondents,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

December 15, 2017

Court of Appeals Case No.
41A01-1706-JT-1333

Appeal from the Johnson Circuit Court

The Honorable K. Mark Loyd, Judge

The Honorable Andrew Roesener, Juvenile Magistrate

Trial Court Cause Nos.
41C01-1701-JT-1
41C01-1701-JT-2

**Pyle, Judge.**

# Statement of the Case

K.P. ("Mother") appeals the termination of the parent-child relationship with her children Mas.R ("Mas.R") and Mal.R. ("Mal.R.") (collectively "the children"), claiming that the Department of Child Services ("DCS") failed to prove by clear and convincing evidence that: (1) there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for placement outside Mother's home will not be remedied; and (2) a continuation of the parent-child relationship poses a threat to the children's well-being. Concluding that there is sufficient evidence to support the trial court's decision to terminate the parent-child relationship, we affirm the trial court's judgment.[1]

We affirm.

# Issue

> Whether there is sufficient evidence to support the involuntary termination of Mother's parental rights.

# Facts

Mother has two children, son Mas.R., who was born in May 2012, and daughter Mal.R., who was born in February 2014. In August 2015, DCS received a report of drug use and unclean and unsafe conditions in Mother's

---

[1] The children's father voluntarily relinquished his parental rights and is not a party to this appeal.

home. DCS Assessor Bradley McCarty ("Assessor McCarty") went to Mother's home to investigate the allegations. Mother was not home, but her husband answered the door and refused to allow Assessor McCarty to enter. Assessor McCarty noticed that eighteen-month-old Mal.R. had dog feces on her foot and was wearing nothing but a diaper that was full of urine and feces. Later than evening, a neighbor noticed Mal.R. wandering around outside wearing only a diaper and a pajama top. Mal.R. was cold and shivering, and her legs and feet were covered with grass and dirt. Assessor McCarty subsequently returned to Mother's home with an emergency custody detention order and removed the children, who were placed with paternal grandmother.

[4] DCS filed a petition alleging that the children were children in need of services ("CHINS") because of a lack of supervision, inappropriate housing, and drug use in the home. In September 2015, Mother was charged with Level 5 felony dealing in a controlled substance. The following day, she admitted that her children were CHINS, and the trial court ordered her to maintain appropriate housing, abstain from drug use, and complete a substance abuse assessment and follow all recommendations.

[5] In October 2015, Mother was assessed by a substance abuse counselor at Adult and Child Health. She entered an intensive outpatient treatment program but was discharged from the program two months later because of numerous positive drug screens and because she had violated the program's attendance policy. In March 2016, Mother was assessed by another substance abuse counselor and entered another intensive outpatient treatment program. She

was discharged from the program two months later because of positive drug screens. She was referred to inpatient drug and alcohol treatment but failed to follow the recommendation.

[6] Ten months later, in August 2016, Mother gave birth to a baby who tested positive for drugs. Following the baby's birth, Mother attempted to smuggle a syringe, spoon, and tourniquet into the hospital in her undergarments. The baby died in October 2016. The following month, Mother entered an inpatient treatment program. She was discharged after detox and was given follow-up recommendations, which she failed to follow.

[7] Two months later, in January 2017, DCS filed a petition to terminate Mother's parental rights. In February 2017, Mother met with a DCS supervisor and admitted that she had used heroin five days before the meeting. She requested additional services from DCS and was referred to Adult and Child Health for another evaluation that was scheduled for March 2, 2017. Mother, however, failed to attend the scheduled appointment and was arrested for drug-related charges on March 7.

[8] Testimony at the April 2017 termination hearing revealed that Mother had used methadone, controlled substances, such as tramadol and hydrocodone, and heroin during the course of the CHINS proceedings. Mother admitted at the hearing that she had used drugs as recently as one to two weeks before the hearing. The testimony further revealed that Mother had demonstrated inconsistent attendance at supervised visitation with her children. When she

did attend visitation, Mother did not interact appropriately with her children, and the visitation supervisor suspected that Mother was under the influence of drugs at some of the visitations. Mother was eventually unsuccessfully discharged from the supervised visitation program. At the time of the hearing, Mother had only seen her children twice in the previous four to five months. In addition, the evidence revealed that Mother had not demonstrated stable housing during the almost two years that her children had been in foster care. Specifically, Mother had lived with her mother until Mother stole from her. Mother had also lived with her husband's family and was "floating around with people." (Tr. 40). Both the DCS family case manager and court-appointed special advocate testified that termination was in the children's best interests. The plan was for paternal grandmother to adopt the children.

[9] Following the hearing, the trial court issued a detailed order terminating Mother's parental rights. Mother now appeals the termination.

# Decision

[10] Mother argues that there is insufficient evidence to support the termination of her parental rights. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re K.T.K.*, 989 N.E.2d 1225, 1230 (Ind. 2013). However, the law provides for termination of that right when parents are unwilling or unable to meet their parental responsibilities. *In re Bester*, 839 N.E.2d 143, 147 (Ind. 2005). The purpose of terminating parental rights is not to punish the

parents but to protect their children. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *trans. denied*.

[11] When reviewing the termination of parental rights, we will not weigh the evidence or judge the credibility of the witnesses. *K.T.K.*, 989 N.E.2d at 1229. Rather, we consider only the evidence and reasonable inferences that support the judgment. *Id.* Where a trial court has entered findings of fact and conclusions thereon, we will not set aside the trial court's findings or judgment unless clearly erroneous. *Id.* (citing Ind. Trial Rule 52(A)). In determining whether the court's decision to terminate the parent-child relationship is clearly erroneous, we review the trial court's judgment to determine whether the evidence clearly and convincingly supports the findings and the findings clearly and convincingly support the judgment. *Id.* at 1229-30.

[12] A petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
> > (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

IND. CODE § 31-35-2-4(b)(2). DCS must prove the alleged circumstances by clear and convincing evidence. *K.T.K.*, 989 N.E.2d at 1231.

[13] Here, Mother argues that there is insufficient evidence to support the termination of her parental rights. Specifically, she contends that the evidence is insufficient to show that there is a reasonable probability that: (1) the conditions that resulted in the children's removal or the reasons for placement outside Mother's home will not be remedied; and (2) a continuation of the parent-child relationship poses a threat to the children's well-being.

[14] At the outset, we note that INDIANA CODE § 31-35-2-4(b)(2)(B) is written in the disjunctive. Therefore, DCS is required to establish by clear and convincing evidence only one of the three requirements of subsection (B). *In re A.K.,* 924 N.E.3d 212, 220 (Ind. Ct. App. 2010). We therefore discuss only whether there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for their placement outside Mother's home will not be remedied.

[15] In determining whether the conditions that resulted in a child's removal or placement outside the home will not be remedied, we engage in a two-step analysis. *In re E.M.,* 4 N.E.3d 636, 643 (Ind. 2014). We first identify the conditions that led to removal or placement outside the home and then determine whether there is a reasonable probability that those conditions will not be remedied. *Id.* The second step requires trial courts to judge a parent's

fitness at the time of the termination proceeding, taking into consideration evidence of changed conditions and balancing any recent improvements against habitual patterns of conduct to determine whether there is a substantial probability of future neglect or deprivation. *Id.* Habitual conduct may include parents' prior criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and a lack of adequate housing and employment. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1157 (Ind. Ct. App. 2013). The trial court may also consider services offered to the parent by DCS and the parent's response to those services as evidence of whether conditions will be remedied. *Id.* Requiring trial courts to give due regard to changed conditions does not preclude them from finding that a parent's past behavior is the best predictor of her future behavior. *E.M.*, 4 N.E.3d at 643.

[16] Here, the children were removed from Mother's home because of a lack of supervision, inappropriate housing, and drug use in the home. Our review of the evidence reveals that at the time of the termination hearing, Mother had been unsuccessfully discharged from the supervised visitation program because she had demonstrated inconsistent attendance visiting her children. The visitation supervisor had noticed that Mother did not interact appropriately with her children. The supervisor also suspected that Mother was under the influence of drugs at some of the visitations. Mother had only seen her children twice in the previous four to five months. Mother had not found appropriate housing during the course of the CHINS proceedings and she had continued to use drugs. Specifically, the evidence reveals that Mother had used

methamphetamine, controlled substances, and heroin during the course of the proceedings. She had been unsuccessfully discharged from two intensive outpatient programs because of positive drug screens and for violating the attendance policy of one of the programs. Mother admitted at the hearing that she had used drugs one to two weeks before the termination hearing. This evidence supports the trial court's conclusion that there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for placement outside Mother's home will not be remedied. There is sufficient evidence to support the involuntary termination of Mother's parental rights.

[17] Affirmed.

Kirsch, J., and Bailey, J., concur.