## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 12 2019, 8:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of A.B., Mother, and H.M, Father, and J.B., K.B., and E.B., Children:

A.B. and H.M.,

*Appellants-Respondents,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

June 12, 2019

Court of Appeals Case No. 18A-JT-2374

Appeal from the
Elkhart Circuit Court

The Honorable
Michael A. Christofeno, Judge
The Honorable
Deborah Domine, Magistrate

Trial Court Cause Nos.
20C01-1803-JT-23
20C01-1803-JT-24
20C01-1803-JT-25

**Kirsch, Judge.**

A.B. ("Mother") and H.M. ("Father") (together, "Parents") appeal the juvenile court's order terminating their parental rights to their children J.B., K.B., and E.B. (collectively, "the Children"). Parents contend that the juvenile court's judgment was not supported by clear and convincing evidence that termination was in the best interests of the Children.

We affirm.

## Facts and Procedural History

On October 6, 2016, Department of Child Services ("DCS") received a report that the Children were victims of neglect and were "often left unattended and unsupervised." *Tr. Vol. I* at 8. The source of the report also noted that Mother and her boyfriend were "on meth real bad." *Id.* At this time, Father was incarcerated in the Elkhart County Correctional Facility. *Id.* at 9. Mother and

her boyfriend submitted to drug screens, and both tested positive for THC, methamphetamine, and amphetamines. *Id.* at 10. In November 2016, the Children were tested. E.B.[1] and J.B., who were five and nine years old respectively, tested positive for methamphetamine and amphetamine. K.B., seven years old, tested negative. *Id.* at 11. On November 17, 2016, a hearing was held, and the Parents admitted that the children were in need of services. *Id.* at 15-26.

[4] On December 13, 2016, dispositional orders were entered. *Tr. Vol. II* at 97. Mother was ordered to participate in home-based case management. The Parents were ordered to participate in supervised visitation, to complete drug screens, to complete Substance Abuse and Parenting Assessments, and to participate in therapy services. *Id.* at 98-99.

[5] On April 18, 2017, DCS family case manager Theresa Dills ("FCM Dills") testified that due to her continued drug use Mother was not in compliance with the case plan. *Ex. Vol. I* at 90. She stated that Mother failed to show up for her random drug screens. *Tr. Vol. I* at 83. When Mother did submit to a random drug screen on the day of the hearing, she tested positive for methamphetamine and amphetamine. *Id.* Five days later, Mother was re-tested and again tested positive for methamphetamine, amphetamine, and oxycodone. *Id.* FCM Dills also testified that Father had not completed any of the dispositional orders and

---

[1] E.B. was originally thought to be the child of Mother's boyfriend, B.D. However, on April 24, 2017, it was determined that H.M. was the father of E.B.

continued to be incarcerated with a projected release of December 2020. *Id.* at 84. At the time of the hearing, the projected date for the completion of the permanency plan was June 13, 2017. *Id.*

[6]     FCM Dills submitted a report covering April 2017 to August 23, 2017 noting that Mother had shown signs of improvement: her drug screens were testing negative; she had progressed to unsupervised visits with the Children; and she had obtained employment. *Ex. Vol. I* at 97. At that time, the permanency plan was still reunification. *Id.* at 103.

[7]     In January 2018, DCS reported that Mother had not been compliant with services for the preceding four months. *Id.* at 123. Mother had failed to make any appointments with her individual therapist and tested positive for methamphetamines in October and December 2017. *Id.* DCS ordered that Mother's visits would again be fully supervised. Lifeline Youth and Family Services, which provided home-based services, had to contact Mother four times before Mother responded. *Id.* at 124. The foster home where the Children were living reported that after many of these visits, E.B. or K.B. would come home crying because of something Mother had said to them. *Id.* At this time, the permanency plan was modified to be reunification concurrent with adoption. *Id.*

- Father was convicted of <u>dealing in methamphetamine</u> in 2012 and sentenced to twelve years in the Department of Correction ("DOC") with six years suspended. *Ex. Vol. II* at 243, 247. After being released, Father violated the terms of his

probation in 2016 and pleaded guilty to new charges of possession of methamphetamine and operating a vehicle with a controlled substance. *Tr. Vol. III* at 12. Father was sentenced to serve his remaining six years in DOC. *Id.* at 250; *Tr. Vol. III* at 6. At a hearing in February 2018, the juvenile court noted that Mother had failed to keep appointments with her therapist and had tested positive for methamphetamine in December 2017. *Ex. Vol. I* at 137, 166. A petition for the involuntary termination of parental rights was filed on March 28, 2018. *App. Vol. IV* at 59. In April 2018, DCS reported that Mother tested positive again for methamphetamine and amphetamine on the same day as the initial hearing for termination of parental rights. *Ex. Vol. I* at 166

[8] An evidentiary hearing on the Petition for Termination of Parental Rights was held on August 31, 2018. During the hearing, FCM Dills testified to Mother's drug use, stating that out of fifty-eight drug screens, forty-five were positive. *Id.* at 109. FCM Dills further testified that Mother had not established permanent housing as ordered in the dispositional decree, had not met with her service providers, and did not attend most child and family team meetings. *Id.* at 111-112. FCM Dills testified that she was also concerned about Father's role in the Children's lives. Father was convicted of methamphetamine dealing and possession and has been in prison for significant portions of the Children's lives.

[9] Mother and Father's parental rights were terminated. Parents now appeal.

# Discussion and Decision

[10] Our Indiana Supreme Court has aptly observed that "Decisions to terminate parental rights are among the most difficult our trial courts are called upon to make. They are also among the most fact-sensitive—so we review them with great deference to the trial courts[.]" *E.M. v. Ind. Dep't of Child Servs.*, 4 N.E.3d 636, 640 (Ind. 2014). While the Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise her child, and thus parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet her responsibility as a parent. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005); *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied.* Parental rights are not absolute and must be subordinated to the child's interests in determining the appropriate disposition of a petition to terminate the parent-child relationship. *In re T.F.*, 743 N.E.2d at 773. Termination of parental rights is proper where the child's emotional and physical development is threatened. *Id.* The juvenile court need not wait until the child is irreversibly harmed such that his physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *Id.*

[11] When reviewing a termination of parental rights case, we will not reweigh the evidence or judge the credibility of the witnesses. *In re H.L.*, 915 N.E.2d 145, 149 (Ind. Ct. App. 2009). Instead, we consider only the evidence and the reasonable inferences that are most favorable to the judgment. *Id.* In deference

to the trial court's unique position to assess the evidence, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Id.* at 148-149. A judgment is clearly erroneous only if the legal conclusions made by the juvenile court are not supported by its findings of fact, or the conclusions do not support the judgment. *In re S.P.H.*, 806 N.E.2d 874, 879 (Ind. Ct. App. 2004).

[12] When the juvenile court has entered specific findings and conclusions, we apply a two-tiered standard of review.. *In re B.J.*, 879 N.E.2d 7, 14 (Ind. Ct. App. 2008), *trans. denied.* We first determine whether the findings support the judgment. *Id.* A finding is clearly erroneous when the record contains no facts or inferences drawn therefrom that support it. *Id.* If the evidence and inferences support the trial court's decision, we must affirm. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156 (Ind. Ct. App. 2013), *trans. denied.*

[13] Before an involuntary termination of parental rights may occur, the State is required to allege and prove, among other things:

> (B) that one (1) of the following is true:
>
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). The State's burden of proof for establishing these allegations in termination cases "is one of 'clear and convincing evidence.'" *In re H.L.*, 915 N.E.2d at 149. Moreover, if the juvenile court finds that the allegations in a petition described in section 4 of this chapter are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[14] Parents argue that the juvenile court erred in terminating their parental rights because the evidence presented was not sufficient to prove that termination of their parental rights was in the best interests of the Children. *Appellant's Br.* at 9. Specifically, they point to the testimony of the Children's therapist who said that K.B. struggles with the possibility of not seeing her parents again and that parent contact with the Children would not be a problem if the Parents complied with the court's orders. *Id.* at 11. Mother argues that that she successfully completed a sobriety program, was willing to go back to services, and did not feel like the Children did not want to come home. *Id.* Father contends that he has a relapse plan, maintained contact with the Children, and was receiving job training for release from incarceration (currently pending for

2020). *Id.* Both parents argue that these facts support the conclusion that termination of parental rights was not in the best interests of the Children. *Id.*

[15] In determining what is in the best interests of the child, a trial court is required to look at the totality of the evidence. *In re A.K.*, 924 N.E.2d 212, 224 (Ind. Ct. App. 2010) (citing *In re D.D.*, 804 N.E.2d 258, 267 (Ind. Ct. App 2004), *trans. denied*), *trans. dismissed*. In doing so, the trial court must subordinate the interests of the parents to those of the child involved. *Id.* Termination of a parent-child relationship is proper where the child's emotional and physical development is threatened. *Id.* (citing *In re R.S.*, 774 N.E.2d 927, 930 (Ind. Ct. App. 2002), *trans. denied*). A parent's historical inability to provide a suitable, stable home environment along with the parent's current inability to do so supports a finding that termination is in the best interests of the child. *In re A.P.* 981 N.E.2d 75, 82 (Ind. Ct. App. 2012). Testimony of the service providers, in addition to evidence that the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *In re A.S.*, 17 N.E.3d 994, 1005 (Ind. Ct. App. 2014), *trans. denied.*

[16] A juvenile court need not wait until a child is irreversibly harmed such that his or her physical, mental, and social development is permanently impaired before terminating the parent-child relationship. *In re A.K.*, 922 N.E.2d at 224. Additionally, a child's need for permanency is an important consideration in determining the best interests of a child. *Id.* (citing *McBride v. Monroe Cty. Office of Family and Children*, 798 N.E.2d 185, 203 (Ind. Ct. App. 2003)). At the

termination hearing, the Children's therapist testified that the Children need stability. *Tr. Vol. II.* at 182-82. She further testified that not terminating the parental rights would keep the Children in limbo and could potentially compromise their sense of permanency. *Id.* at 187-88. Therefore, termination of the parental rights would be in support of the child's need for permanency, and, thus, in the Children's best interests.

[17] Mother argues that she had completed a sobriety program. While this achievement is notable, Mother did not seek aftercare as recommended to her by her FCM Dills. *Tr. Vol. II.* at 211. Mother also admits to relapsing two to three times after she completed her program. *Id.* at 207. She noted that she felt a lot of pressure and stress and that the kids were "a lot to handle." *Id.* at 201. Mother states that she was willing to go back to services that DCS offered; however, when offered appointments with the DCS therapist prior to termination, Mother missed nine scheduled visits. *Id.* at 157-58. Mother appeared at one of her other service appointments under the influence. *Id.* at 138. Further, the CASA testified that she believed Mother had not benefitted from the few service appointments Mother attended because Mother was back to using the same drugs that caused the Children to be removed. *Id.* at 149. Lastly, Mother argues that she did not feel like the Children did not want to come home. However, the CASA and the FCM Dills both testified that the Children have said that they do not wish to be reunified and have "begged" to not be returned to their parents. *Id.* at 118, 144. Based on the totality of the

circumstances, it is clear that termination of Mother's parental rights was in the best interests of the Children.

[18] Father separately argues that he had a relapse plan and that he is on a wait list to enter a substance abuse treatment program. *Tr. Vol. I* at 225. However, Father was incarcerated on drug-related charges at the time of the termination hearing with an expected release date of December 2020. He also admitted being charged with additional drug-related charges after DCS had removed the Children. *Id.* at 235. Father further testified at the termination hearing that he has not received any addiction treatment. *Id.* at 229, 236. Father contends that he has maintained contact with the Children while incarcerated. Although Father has spoken with the Children through phone calls, he has not physically visited with the Children since he was incarcerated in 2012. Although Father has been in contact with the Children, his presence in their lives is very limited. As previously stated, the Children do not wish to be reunified with their Father. So, termination of Father's parental rights was in the best interests of the Children.

[19] Based on the totality of the circumstances, we conclude that the evidence supported the juvenile court's determination that termination of Mother's parental rights was in the Children's best interests. Based on the record before us, it was not clearly erroneous for the juvenile court to determine that the Parents' parental rights be terminated.

[20] Affirmed.

Vaidik, C.J., and Altice, J., concur.