## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 09 2020, 11:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Katherine N. Worman
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

John R. Millikan
Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of A.G., Mother, and D.G and D.N, Minor Children,

A.G.,

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

April 9, 2020

Court of Appeals Case No.
19A-JT-2171

Appeal from the
Vanderburgh Superior Court

The Honorable
Brett J. Niemeier, Judge

The Honorable
Beverly K. Corn, Referee

Trial Court Cause Nos.
82D04-1902-JT-313
82D04-1902-JT-314

**Kirsch, Judge.**

[1] A.G. ("Mother") appeals the juvenile court's termination of her parental rights as to D.G and D.N. (collectively, "Children") and raises three issues, which we restate and consolidate as whether the juvenile court's decision to terminate her parental rights was clearly erroneous.

[2] We affirm.

## Facts and Procedural History

[3] D.G. was born on October 21, 2005, and D.N. was born on August 10, 2007.[1] *Appellant's App. Vol. II* at 95, 142. On two separate occasions in 2015, Children were adjudicated as CHINS. *Ex. Vol. I* at 15, 19, 23, 27. This most recent case was initiated on February 27, 2018 when the Indiana Department of Child Services ("DCS") filed separate CHINS petitions for D.G. and D.N. based on allegations that Mother had tested positive for drugs and that Children were having attendance and behavior problems at school. *Ex. Vol. I* at 51, 62; *Tr. Vol. II* at 31. That same day, the juvenile court adjudicated the Children as CHINS based on Mother's admissions. *Ex. Vol. I* at 51, 62. The juvenile court allowed Children to stay in the home with Mother. *Appellant's App. Vol. II* at 96, 151. On March 9, 2018 -- less than two weeks after Children were adjudicated

---

[1] The putative father of Children is deceased. *Appellant's App. Vol. II* at 23, 40.

CHINS -- Mother was arrested and charged with Dealing in a Synthetic Drug as a Level 6 felony. *Ex. Vol. I* at 4, 11.

[4] At the March 28, 2018 CHINS dispositional hearing, the juvenile court ordered Mother to remain drug and alcohol free, seek treatment, submit to random drug screens, and attend two to three AA/NA meetings per week. *Appellant's App. Vol. II* at 23, 40. The juvenile court found that Mother had missed many such appointments since the CHINS case had opened. *Ex. Vol. I* at 52, 63. Mother tested positive for methamphetamine on March 28, 2018 and April 6, 2018, and the Children were removed from the home on April 6, 2018. *Appellant's App. Vol. II* at 24, 41; *Tr. Vol. II* at 75-76. During a case review hearing on August 1, 2018, Mother admitted she relapsed "a couple of times." *Ex. Vol. I* at 35, 66.

[5] During a permanency hearing on January 30, 2019, the juvenile court found that Mother had not pursued substance abuse treatment, that she was living in a home with no water and only a generator for electricity, and that DCS stated that "nothing has been remedied." *Id.* at 59, 69. The juvenile court changed the permanency plan to adoption. *Id*.

[6] Mother was offered substance abuse treatment during the CHINS proceedings, including treatment at the WARM Center, Lighthouse, SafeHaven, Stepping Stone, and Brentwood. *Tr. Vol. II* at 77. Mother did not complete treatment in any of those programs. *Id*. Mother missed three drug screens between March 2018 and April 2019. *Id*. at 78-79; *Appellant's App. Vol. II* at 25, 42. While transportation issues sometimes prevented Mother from submitting to drug

screens, she stated that "sometimes it was because I was dirty, to be honest with you . . . [tested] dirty for methamphetamine." *Tr. Vol. II* at 37. Of the drug screens to which Mother submitted, she tested positive for unprescribed or illegal substances approximately nine times. *Id*. at 79; *Appellant's App. Vol. II* at 25, 42. Mother "absolutely" considers herself an addict and considers methamphetamine as her "drug of choice." *Tr. Vol. II* at 28, 43. During the CHINS proceedings, Mother also tested positive for benzodiazepines and oxycodone. *Id*. at 79.

[7]     On February 15, 2019, DCS filed petitions to terminate Mother's parental rights as to Children, and on May 8, 2019 and July 8, 2019, the juvenile court conducted hearings on DCS's petitions. *Appellant's App. Vol.* II at 21, 38. Mother acknowledged that Children "absolutely" should be adopted if she was unable to "be stable." *Tr. Vol. II* at 49. Mother then admitted that she has "never known stability" due to her substance abuse and that the fear of losing Children never kept her sober. *Id*. Mother admitted that she had "plenty of time to . . . get solid ground underneath [her] feet" but could not curb her substance abuse. *Id*. at 51.

[8]     Mother also testified that she could not promise that she would not relapse again. *Id*. She admitted that she had last used methamphetamine three days before the second termination hearing, and despite her addictions, she was not in treatment at the time of the hearings. *Id*. at 43. Also, at the time of the second termination hearing, Mother was in custody on a petition to revoke her bond in her criminal case because she had tested positive for methamphetamine

and had failed to sign up for drug treatment programs. *Id*. at 27; *Appellant's App. Vol. II* at 26, 42-43.

[9] Family Case Manager Lauren Koehler ("FCM Koehler") testified that after several years of instability and substance abuse by Mother, it was in the best interests of Children to have Mother's parental rights terminated. *Tr. Vol. II* at 82, 84. Specifically, FCM Koehler testified that the last sixteen months have left Children "angry and confused." *Id.* at 84. FCM Koehler also observed that Children have been subject to three CHINS adjudications in the past five years, and she testified that Children needed stability. *Id*. at 85. FCM Koehler also stated that the constant involvement by DCS has traumatized Children, who need a consistent schedule to function daily. *Id*. at 84.

[10] Court Appointed Special Advocate Jean Karmire ("CASA Karmire") testified that D.G. needed to be able to "get up every day and know that this is what's gonna happen on that day and not be worried about his Mother using meth or his Mother not being able to provide him food and shelter that he needs." *Id*. at 95. CASA Karmire further testified that D.N. "needs to be in an environment where she can have consistency, know that someone is there every day for her." *Id*. at 96. In a report filed a few days before the second hearing, CASA Karmire stated that "[b]ased on [M]other's recent positive methamphetamine screen through the DAPS program and subsequent PTR; multiple positive screens throughout the case; inconsistency with screening for DCS; and lack of consistent, stable housing; CASA feels it is in the children's best interest for

mother's rights to be terminated and the children to be made available for adoption." *Appellant's App. Vol. II* at 86-87.

[11] On August 14, 2019, the juvenile court issued its termination orders. *Id*. at 88, 141. In those orders, the juvenile court concluded that Mother would not remedy the reasons that Children were removed from the home for the following reasons:

> a. This is the third (3rd) CHINS matter filed since 2015 with all based, in part, on substance abuse;
>
> b. Mother has not completed substance abuse treatment since the filing of the most recent CHINS, despite having been referred to and entered into at least three (3) different programs since the CHINS case opened in February 2018;
>
> c. Mother continues to abuse methamphetamine and used it within three (3) days of the termination fact finding trial;
>
> d. Mother has not been able to maintain stable housing for more than 30-90 days, having been in several locations from jail to a shelter to a hotel to staying with friends and her own mother, who is known to abuse drugs;
>
> e. Mother was arrested for a drug related criminal matter, which matter remained unresolved on the date of the termination fact finding trial[.]

*Id.* at 30, 47. The juvenile court also found that Mother 1) was unable to maintain sobriety and 2) was provided a stable housing program through

SafeHaven, but she did not comply with the program's rules and was asked to leave. *Id*. at 26, 43.

[12] As to its conclusion that termination of Mother's parental rights was in the best interests of Children, the juvenile court found, as to D.G., that:

> [[D.G.] has suffered with] anger management, intermittent explosive disorder, and conduct disorder] for several years; however, he is extremely angry with Mother, which has exacerbated his aggressive behaviors;
>
> . . . .
>
> [Mother is unable] to provide appropriate care and supervision for [D.G.];
>
> . . . .
>
> Mother's continuing pattern of substance abuse, unemployment, and housing instability in the past indicates that maintaining a parent-child relationship with [D.G.] is not in the best interests of [D.G.].

*Id*. at 44. As to D.N.'s best interests, the juvenile court also found that Mother was unable to provide appropriate care and supervision and that Mother's ongoing substance abuse, unemployment, and housing instability indicated that termination of the parent-child relationship was in D.N.'s best interests. *Id*. at 27. The juvenile court also found that termination of Mother's parental rights was in D.N.'s best interests because Mother could not provide the stability that D.N. needed. *Id*. Mother now appeals.

# Discussion and Decision

[13]     Mother argues DCS failed to present clear and convincing evidence to support the termination of her parental rights under Indiana Code section 31-35-2-4(b)(2)(B),(C) because 1) there was a reasonable probability that the conditions that resulted in Children's removal would be remedied and the continuation of the parent-child relationship would not pose a threat to Children's well-being, and 2) termination was not in Children's best interests. Mother concedes that DCS presented clear and convincing evidence to satisfy its burden of proof under subsection (b)(2)(A), concerning the period of removal from home and efforts at reunification, and subsection (b)(2)(D), concerning whether there is a satisfactory plan for the care and treatment of Children.

[14]     As our Supreme Court has observed, "Decisions to terminate parental rights are among the most difficult our trial courts are called upon to make. They are also among the most fact-sensitive -- so we review them with great deference to the trial courts[.]" *E.M. v. Ind. Dep't of Child Servs.*, 4 N.E.3d 636, 640-43 (Ind. 2014). We consider only the evidence and reasonable inferences that are most favorable to the judgment. *In re H.L.*, 915 N.E.2d 145, 149 (Ind. Ct. App. 2009). Therefore, we will set aside the court's judgment terminating a parent-child relationship only if it is clearly erroneous. *Id.* at 148-49.

[15]     While the Fourteenth Amendment to the United States Constitution protects the traditional right of a parent to establish a home and raise his or her child and parental rights are of a constitutional dimension, the law allows for the termination of those rights when a parent is unable or unwilling to meet his

responsibility as a parent. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 145 (Ind. 2005); *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Termination of parental rights is proper where the child's emotional and physical development is threatened. *Id.*

[16] Where, as here, the juvenile court entered specific findings and conclusions, we normally apply a two-tiered standard of review. *In re B.J.*, 879 N.E.2d 7, 14 (Ind. Ct. App. 2008), *trans. denied*. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* Here, because Mother does not claim that the findings are not supported by the evidence in the record, we need only determine whether the findings support the juvenile court's legal conclusions. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) (Unchallenged findings "must be accepted as correct.").

[17] On appeal, Mother claims that DCS failed to prove:

> (B) that one (1) of the following is true:
>
> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> . . . .

> (C) that termination is in the best interests of the child[.]

Ind. Code § 31-35-2-4(b)(2)(B),(C). The State's burden of proof is clear and convincing evidence. *In re H.L.*, 915 N.E.2d at 149. If the juvenile court finds that the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[18] Because DCS's burden of proof under subsection b(2)(B) of Indiana Code section 31-35-2-4(b)(2)(B) is disjunctive, we confine our analysis to determine whether the juvenile court committed clear error in concluding that the conditions that led to removal of Children would likely not be remedied. To do so, we first ascertain what conditions led to their removal and, second, determine if the juvenile court's findings support its conclusion that those conditions would likely not be remedied. *See K.T.K. v. Ind. Dep't of Child Servs.*, 989 N.E.2d 1225, 1231 (Ind. 2013). In the second step, the juvenile court must judge a parent's fitness at the time of the termination proceeding, considering evidence of changed conditions and balancing a parent's recent improvements against "'habitual pattern[s] of conduct to determine whether there is a substantial probability of future neglect or deprivation.'" *E.M.*, 4 N.E.3d at 643 (quoting *K.T.K.*, 989 N.E.2d at 1231). Pursuant to this rule, "trial courts have properly considered evidence of a parent's . . . criminal history, drug and alcohol abuse, history of neglect, failure to provide support, and lack of adequate housing and employment." *In re D.B.*, 942 N.E.2d 867, 873 (Ind. Ct. App. 2011). When determining whether the conditions for the removal would

be remedied, the juvenile court may consider the parent's response to the offers of help. *Id.*

[19] Here, a number of conditions led to the removal of Children, including Mother's relapses into drug use. *Tr. Vol. II* at 31. Children were removed from Mother's care on April 6, 2018 because she twice tested positive for methamphetamine. *Id*. at 75-76; *Appellant's App. Vol. II* at 24. Children were removed also because Mother missed several appointments for drug screens. *Appellant's App. Vol. II* at 23, 26, 96, 151, 154.

[20] Mother contends DCS failed to show that there was a reasonable probability that Mother would not remedy these conditions. While she states that she attended "several" substance abuse programs, she does not contend that she fully complied with these programs. *Appellant's Br.* at 17. Mother also states that she attended drug screens "occasionally," and acknowledges that she missed thirty drug screens and tested positive for drugs on nine occasions. *Id*. at 18. Mother also argues that her expressions of remorse about her drug use relapses also illustrate DCS's failure to show there is a reasonable probability that Mother would not remedy the reasons for the removal of Children. In so arguing, Mother asks us to reweigh the evidence, which our standard of review does not allow. *See E.M.*, 4 N.E.3d at 640-43; *In re H.L.*, 915 N.E.2d at 149.

[21] We find that the juvenile court's findings support its conclusion that there was a reasonable probability that Mother would not remedy the conditions that led to the removal of Children. Its findings about Mother's drug use, addiction to

methamphetamine, failed drug tests, pending criminal charges, and failure to abide by rules of the housing programs were legally sufficient for the juvenile court to conclude that it was not reasonably probable that Mother would remedy the conditions that led to the removal of Children. *See In re D.B.*, 942 N.E.2d at 873; *see also R.W., Sr. v. Marion Cty. Dep't of Child Servs.*, 892 N.E.2d 239, 248 (Ind. Ct. App. 2008) (at the time of termination hearing, approximately three years had passed since the children were removed from the family home, yet Mother and Father still had not completed court-ordered services and there was no significant overall improvement of the conditions leading to removal).

[22]     Mother also contends the evidence does not support the juvenile court's finding that termination of her parental rights is in the best interests of Children. In support, she contends that she was compliant with the terms and requirements for visitation and that she has a strong bond with Children. Once again, Mother asks us to reweigh the evidence, which we may not do. *See E.M.*, 4 N.E.3d at 640-43; *In re H.L.*, 915 N.E.2d at 149.

[23]     In determining the best interests of a child, the juvenile court is required to look to the totality of the evidence. *McBride v. Monroe Cty. Office of Family & Children,* 798 N.E.2d 185, 203 (Ind. Ct. App. 2003). The juvenile court must subordinate the interests of the parent to those of the children. *Id.* The juvenile court need not wait until the children are irreversibly harmed before terminating the parent-child relationship. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1158-59 (Ind. Ct. App. 2013), *trans. denied.* A parent's drug abuse will support a

trial court's conclusion that terminating parental rights is in the best interest of a child. *In re D.L.*, 814 N.E.2d 1022, 1030 (Ind. Ct. App. 2004), *trans. denied*. Likewise, the inability of a parent to provide a stable environment for a child the supports the trial court's conclusion that termination of parental rights is in a child's best interests. *K.T.K.*, 989 N.E.2d at 1230. Here, the trial court made findings about Mother's drug use and inability to provide a stable environment for Children, which provided adequate grounds for the trial court to conclude that it was in the best interests of Children to terminate Mother's parental rights. *See In re D.L.*, 814 N.E.2d at 1030; *K.T.K.*, 989 N.E.2d at 1230 Finally, we observe that the statements of FCM Koehler and CASA Carmine were also clear and convincing evidence that termination of Mother's parental rights was in the best interests of Children, even though the trial court did not expressly rely on those statements in its findings. *See A.D.S.*, 987 N.E.2d at 1158–59 (recommendations by case manager and child advocate to terminate parental rights, in addition to evidence that the conditions resulting in removal will not be remedied, is sufficient to show by clear and convincing evidence that termination is in child's best interests). Accordingly, the trial court's decision to terminate Mother's parental rights was not clearly erroneous. *See In re H.L.*, 915 N.E.2d at 148-49.

[24] Affirmed.

Bailey, J., and Mathias, J., concur.